# Jarvis *v.* The State.

*Indictment for Murder.*

1. *Organization of jury; trial of capital case; competency of juror as affected by opinion as to guilt or innocence of defendant.* In the organization of a petit jury for the trial of a capital case, one of the persons whose name was drawn, upon his examination *voir dire* as to whether he had a fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict, was asked by the court, by way of information if the evidence should be different on the trial from what he had heard about the case, would the opinion that he had influence his mind in coming to a verdict, or could he lay that opinion aside and be governed by the evidence adduced on the trial without reference to the opinion, and further asked if after this explanation he had a fixed opinion. Upon the juror's answering that he had, the court asked if "the opinion is determined entirely upon the evidence?" and to this the juror replied, "I will try the case entirely upon the evidence." *Held:* That the statement of the juror that he would try the case entirely upon the evidence made him competent.

2. *Same; same; when finding of trial court set aside.*—The question as to whether a person drawn as a juror on the trial of a capital case, has such a fixed opinion as to the guilt or in-

[Jarvis v. The State.]

nocence of the defendant as would bias his verdict, is one of mixed law and fact for the determination of the trial court, and this court on appeal will not set aside the finding of the trial court upon the question, unless it affirmatively appears in the answers of the juror taken as a whole that he entertains a fixed opinion which would bias his verdict.

3. *Same; right of solicitor to examine juror on voir dire.*—While the general rule prevailing in this State is that before challenge neither party has a right to examine a juror on his *voir dire*, to ascertain whether he is subject to challenge, yet the court in the exercise of its discretion, may permit such examination, and when permitted the exercise of the discretion on the part of the court is not revisable on appeal.

4. *Same; same.*—When a person drawn as a juror on the trial of a capital case, during his examination *voir dire* as to his competency as a juror, states that he would not convict on circumstantial evidence in a capital case, it is permissible for the court to allow the solicitor for the State to ask such juror, "Are you opposed to capital punishment?"

5. *Same; court may exclude juror who at the time is sitting as juror in another case.*—In the organization of a petit jury for the trial of a capital case, where the name of a juror is drawn who at the time is a member of a jury that is engaged in deliberating upon another case, which jury had retired to the jury room, it is not error for the court to refuse defendant's request to send for said juror, who was engaged in the trial of the other case.

6. *Same; exemption of State troops from service as jurors.*—A membership in the Alabama National Guard is, under the statute, an exemption from jury duty, and when in the organization of a jury for the trial of a capital case one of the persons called as a juror presents his commission as an officer in the Alabama National Guard, it is not error for the court, upon the membership of such person in the Alabama National Guard being shown, to excuse him from serving as a juror.

7. *Indictment for murder; admissibility of diagram or map.*—On a trial under an indictment for murder, a map or diagram of the place of the homicide illustrating the relative location of objects or positions of persons inquired about on the trial if proved to be correct, is admissible in evidence; and it is of no consequence that such diagram or map was made by the solicitor, or that its correctness was not shown prior to its admission in evidence, provided its correctness was subsequently proved.

[Jarvis v. The State.]

8. *Indictment for murder; admissibility of evidence.*—On a trial under an indictment for murder, where there was evidence tending to show that the deceased had seduced a niece of the defendant's wife, and it was proved without conflict that the defendant possessed information of such seduction before going to see deceased at the time of the homicide, the source from which the defendant acquired his knowledge of the debauch of the girl is wholly immaterial; and, therefore, if the court erred in refusing to permit the defendant to prove that his wife had told him of the deceased's seduction of his niece several days before the homicide, such error is without injury to the defendant.

9. *Same; same; the court has a right to exclude illegal evidence on its own motion at any time before the jury retires.*—While if an illegal question is propounded to a witness and there is no objection to it and the answer is responsive, the party against whom it is offered is not entitled to have the answer excluded, yet, on the other hand, the court commits no error in allowing a motion to exclude or in excluding such illegal evidence of its own motion at any time before the jury retires.

10. *Evidence; practice as to introduction of evidence; what is revisable.*—The order as to the introduction and examination of witnesses is, to a very great extent, a matter of discretion for the court. and the court's action in allowing a witness for the prosecution to be examined as to new matter, after the close of the defendant's evidence, is not revisable, unless it affirmatively appears that some substantial right of the defendant was thereby prejudiced.

11. *Trial and its incidents: permitting witness placed under the rule to testify after the violation of the rule, within the discretion of the trial court.*—It is within the sound discretion of the trial court to permit a witness who, after having been put under the rule, remained in the court house during the examination of the other witnesses, to testify, and the exercise of this discretion is not revisable on appeal.

12. *Dying declarations; when admissible.*—When one who has been mortally wounded is informed by his attending physician that he would die and could not live but a short time, upon asking the physician if he was absolutely beyond recovery he was told that he was going to die, and he did die within a few hours thereafter, statements made by such person in reference to the circumstances of his killing are admissible as dying declarations.

13. *Same; may be proved by oral evidence, although reduced to writing.*—The dying declarations having been reduced to writing and read over to him, but not signed by the deceased,

[Jarvis v. The State.]

may be proved by testimony of the person who was present at the time such declarations were made, without producing the paper or proving its loss.

14. *Evidence; when objection comes too late.*—Where after a question is propounded to a witness and he answers it, and a general objection is interposed, such objection comes too late and is properly overruled.

15. *Indictment for murder; argument of counsel to the jury.*—On a trial under an indictment for murder, where there was evidence introduced by the defendant tending to show that the deceased had seduced a niece of the defendant's wife by means of a promise of marriage, and subsequently the court ruled out all of the evidence as to the promise of marriage, if the counsel for the defendant, in his argument to the jury, states to the jury that the evidence showed that the deceased had seduced a niece of the defendant's wife by means of a promise of marriage, it is no error for the court of its own motion to stop the counsel in his argument, and withdraw from the jury the statement of the counsel that the deceased seduced the young lady by means of a promise of marriage.

16. *Homicide; charge of court to jury as to cooling time.*—On a trial under an indictment for murder, where there was evidence tending to show that the deceased had seduced a niece of the defendant's wife, an instruction by the court in its general charge that if the jury believe from the evidence that the deceased had connection with the niece of the defendant's wife, and the defendant was "informed of that fact and he had time to think and did think, and that his mind was in a cool state," then, "as a matter of law, that would be cooling time absolutely" and the killing would be murder and not manslaughter, is free from error.

17. *Same; charge of court to jury.*—On a trial under an indictment for murder, an instruction by the court in its general charge that "the burden of proof is on the defendant to show that he could not retreat without danger or apparent danger of losing his life or suffering great bodily harm, and when the court says the burden of proof is on the defendant, it means that the evidence must be sufficient to raise a reasonable doubt," if faulty at all, is faulty in that it was too favorable to the defendant.

18. *Same; same.*—On a trial under an indictment for murder, a charge is free from error and properly given at the request of the State, which instructs the jury, "If a party enters into a contest dangerously armed and fights under an undue advantage, even though mutual blows pass, if he slays his adversary pursuant to a previously formed design, either spe-

[Jarvis v. The State.]

cial or general, to use such weapon in case of an emergency in which his life would not be endangered, or he would not be in danger of suffering great bodily harm, it is not manslaughter, but it is murder."

19. *Same; charge as to self-defense.*—On a trial under an indictment for murder, a charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury, "If the defendant provoked or brought on the difficulty, or entered willingly into the fight with deceased, then he cannot set up self-defense in this case."

20. *Same; same.*—On a trial under an indictment for murder, a charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury, "To make the plea of self-defense available, the defendant must be without fault. If he was himself the aggressor he cannot invoke the doctrine of self-defense, even if the deceased was approaching him in a hostile manner; and whether the necessity to take the life of the deceased was real or only apparent, if brought about by the design, contrivance or fault of the defendant, he cannot be excused on the plea of self-defense."

21. *Same; charge as to malice.*—On a trial under an indictment for murder, a charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury, "In case of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice, and whenever malice is shown and is unrebutted by the circumstances of the killing or by other facts in evidence, there can be no conviction for any less degree of homicide than murder."

22. *Same; charge as to murder in first degree.*—On a trial under an indictment for murder, a charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury that if the defendant, in the county where the indictment was found, before the finding of the indictment, "purposely killed the deceased by shooting him with a pistol with a wickedness or depravity of heart towards said deceased, and the killing was determined on before hand, and after reflection (for however short a time before the fatal shooting is immaterial), the defendant is guilty of murder in the first degree."

23. *Same; charge as to self-defense.*—On a trial under an indictment for murder, a charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury, "When the defendant sets up self-defense in

[Jarvis v. The State.]

justification or excuse of a killing, the burden of proof is upon him to show to the jury by the evidence, that there was a present, impending danger, real or apparent, to life or limb, or of grievous bodily harm from which there was no other probable means of escape, unless the evidence which proves the homicide proves also its excuse or justification."

24. *Same; same.*—On a trial under an indictment for murder, a charge as to self-defense which ignores all question of freedom from fault, is erroneous and properly refused.

25. *Charge as to reasonable doubt.*—On the trial of a criminal case a charge is properly refused as being argumentative which instructs the jury that "before you can convict the defendant you must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and unless you are so convinced by the evidence of defendant's guilt that you would each venture to act upon that decision in matters of highest importance and concern to your own interest, then you must find the defendant not guilty."

26. *Homicide; charge as to good character generating a reasonable doubt.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that if the defendant "has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character."

27. *Same; charge as to reasonable doubt.*—On a trial under an indictment for murder, charges which predicate the defendant's acquittal upon a reasonable doubt arising out of any part of the evidence, or any want of evidence, pretermitting all consideration by the jury of the whole evidence, are erroneous and properly refused.

28. *Same; charge of court to jury.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "words alone, under some circumstances, may be of such an insulting or provoking character as to kindle sudden passion, and provoke immediate resentment, even to the taking of life."

29. *Same; charge as to reasonable doubt.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "a person charged with a felony should not be convicted unless the evidence excludes to a moral certainty every hypothesis but that of his guilt, no matter how strong the circumstances are, they do not come up to the full measure of proof which the law requires,

[Jarvis v. The State.]

if they can be reasonably reconciled with the conclusion that the defendant is innocent"; such charge omitting the word "reasonable" before the word "hypothesis."

30.  *Same; charge as to cooling time.*—On a trial under an indictment for murder, where the evidence adduced, if believed by the jury, showed that the killing was not of a less degree than murder, a charge is erroneous and properly refused which instructs the jury that "whether there has been cooling time, such as to make the killing murder, which would otherwise be manslaughter, is a question for the jury."

31.  *Same; when refusal to give charge as to murder in first degree error without injury.*—Where on a trial under an indictment for murder, the defendant is convicted for murder in the second degree, the refusal of the court to give a charge at the request of the defendant which instructed the jury as to murder in the first degree, if error, is error without injury to defendant.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellant in this case, Gilbert R. Jarvis, was indicted, and tried for the murder of Harry Reardy, and was convicted of murder in the second degree and sentenced to the penitentiary for thirty-five years.

During the impannelling of the jury for the trial of the defendant, one J. L. Fincher, who had been regularly summoned as one of the jurors in said case, was examined upon his *voir dire* as to his qualifications as a juror. So far as his examination as to having a fixed opinion as to the defendant's guilt which would bias his verdict, the bill of exceptions contains the following recitals: "In answer to the question propounded to him by the said clerk, as to whether he had a fixed opinion as to the innocence or guilt of the prisoner at the bar which would bias his verdict, he replied, 'I would like to answer that in my own language.' The court here interposed and said, 'No, no, I will explain. Is the opinion that you now have fixed in your own mind, that you cannot lay that opinion aside and try the case entirely upon the evidence, or in other words, if the evidence should be different on the stand from that which you have heard said about the case, would the opinion that you now have, have some influence on your mind in coming to a verdict or could you lay that opinion aside and be governed by that evidence without reference to the opinion?' The

[Jarvis v. The State.]

juror then said, 'No, sir, I have it not fixed that way.'
The court then said, 'Well, have you a fixed opinion now
after this explanation?' The juror answered, 'I have.'
The court then said, 'Do I understand the opinion is de-
termined entirely upon the evidence?' To which the
juror replied, 'I will try the case entirely upon the evi-
dence.' This was all of the juror's tesimony on the sub-
ject of a fixed opinion. The court then ruled that the
juror was competent, and to this ruling the defendant
then and there excepted."

Upon the examination of one J. W. Cook, who was reg-
ularly summoned as a juror in said case, upon his *voir
dire* as to his having a fixed opinion which would bias
his verdict, the bill of exceptions contains the following
recitals: "In answer to the question propounded to him
by the clerk as to whether he had a fixed opinion which
would bias his verdict, he replied, 'As far as the evidence
I now have, I have a fixed opinion.' The court then in-
terposed and asked the juror the following question: 'Is
the opinion that you now have of such a nature that you
could not be governed entirely by the evidence that comes
up in the case, in other words, if the evidence should be
different on the stand from that which you now have,.
would the opinion that you now have have some influ-
ence on your verdict, or could you lay that opinion aside
and be governed by the evidence without reference to the
opinion?' The juror replied, 'I think so, it depends on
the case, I could.' The court then asked, 'What?' The
juror replied, 'I could.' This was all of the juror's tes-
timony on the subject of a fixed opinion. The court
ruled that the juror was competent, and the defendant
then and there excepted."

During the examination of one John W. Rabby, who
had been regularly summoned as one of the jurors in
said cases, as to his qualifications as a juror, he was asked
by the solicitor for the State the following question:
"Whether he was related to the defendant by blood or
marriage." The defendant objected to the question
propounded by the solicitor, the court overruled the ob-
jection and the defendant duly excepted. The juror
answered, "No," and was then challenged peremptorily
by the State.

[Jarvis v. The State.]

During the examination of one O. M. McMillan, who was regularly summoned as a juror in said case, as to his qualifications as a juror, he was asked by the solicitor for the State whether he was related by blood or marriage to the defendant. The defendant objected to this question asked by the solicitor, the court overruled the objection, and to this ruling the defendant duly excepted. The juror answered that he was not, and was subsequently accepted by both the State and defendant and served as a juror.

During the examination of one Curtis Bush, Jr., who had been regularly summoned as a juror in said case, as to his qualifications as a juror, he testified that he would not convict on circumstantial evidence in a capital case. The solicitor for the State then asked said Bush the following question: "Are you opposed to capital punishment in a murder case?" The defendant objected to this question as asked by the solicitor, the court overruled the objection and the defendant duly excepted. The juror then answered, "I do not know that I am." In answer to other questions propounded by the court, the juror answered, "Under certain circumstances I would hang a man for murder." The State then challenged the juror peremptorily.

One of the jurors who had been regularly summoned as a juror in this case having been called, and not answering to his name when it was drawn, from the hat from which the jurors names were being drawn by the clerk of the court, the defendant was informed by the court that he was on a hung jury which was trying another case pending in the same court. The defendant objected to proceeding with this case until this juror was sent for, the court overruled the objection, and the defendant then and there excepted. The court then proceeded with the challenge of other jurors in the case.

One Y. W. Pringle who had been regularly summoned as a juror in said case, upon answering to his name handed to the court his commission as first lieutenant Battery "A" 1st Artillery, Alabama National Guard, and claimed that he was exempt because he belonged to the military. Said Pringle testified that the commission had been issued to him and he was a member of the Alabama National Guard, and his membership in the Ala-

bama National Guard was shown by the commission. Thereupon the court excused the juror to which action of the court the defendant duly excepted.

The evidence in this case tended to show that on the 30th day of September, 1902, between 2 and 3 o'clock P. M., the defendant fatally shot the deceased Harry Reardy, with a pistol; that the shooting took place at the store of Bloch Brothers on the southeast corner of Exchange Alley and Water street, in the city and county of Mobile, State of Alabama. The State introduced Dr. Inge, who testified that he examined Reardy a few minutes after he was shot and found him in a collapsed, and, in his opinion at the time, a dying condition from three mortal wounds; that he survived the wounds about twenty-four hours; that about 9 or 10 o'clock the night before Reardy died he informed Reardy that he was not going to get well and could not live much longer, and that his father wished him to make a dying statement. Reardy said, Doctor, do you think I am absolutely beyond recovery," and he told Reardy he was going to die and Reardy answered he was ready to make and statement: That Reardy gradually grew weaker and died next day; that between 11 and 12 o'clock next day he, the Dctor, saw Reardy was dying and informed him of his condition.

There was evidence tending to show that the deceased several months before the shooting had been paying attention to the defendant's niece-in-law, Miss Laura Dana, as her accepted lover; that he had given her an engagement ring and bracelet and that he had seduced her and impregnated her with a bastard child; that about a week before the shooting the mother of the young lady and her aunt, Mrs. Gilbert R. Jarvis, the wife of the defendant, discovered the young girl's condition, and disclosed it to the defendant and the other relatives of the family, except the father of the young lady, who was an engineer on one of the pilot boats of the U. S. Government, and at the time away from home; that efforts were made by the male relatives of the young lady to get the deceased to repair the injury he had done as far as he could by marrying the young lady; that several interviews were held with him by an uncle and

brother-in-law of the young lady, and that at one of
these interviews held a few days before the shooting,
and in the office of the attorneys the deceased had em-
ployed to represent him in the matter, the deceased had
refused to marry the young lady, and as one of the
reasons he gave for such refusal, stated that the young
lady had informed him that the defendant had told her
to marry him, the deceased, and that then they, the de-
fendant and the defendant's niece-in-law would have a
good time together. There was other evidence tending
to show that the statement made by Reardy was untrue,
the defendant swearing that he made no such sugges-
tion to the young lady, and the young lady swearing
that she made no such statement to Reardy; that the
defendant was informed of what the deceased had stated
at this said interview, and had attempted to see the de-
ceased on several occasions after this by going to his
place of business and once to his house, but had failed
until the day on which the shooting took place; that the
defendant sought the deceased in order to try to induce
him to marry the young lady, and in order to get him
to see her for the purpose of having an explanation in
reference to the remark the deceased had claimed at the
interview had between him and the young lady's uncle
and brother-in-law, at his lawyer's office, that the young
lady had made about the defendant.

As to the circumstances of the killing the evidence
tended to show that on the day of the shooting the de-
fendant went to Bloch Brothers store, where deceased
was employed, and found the deceased there in his shirt
sleeves; that he told him he wanted to see him; that de-
ceased informed him that he was busy and couldn't see
him then; that the defendant then asked two young men
who were talking to the deceased to excuse the deceased,
and that the deceased then went into the office of the
store and got his hat and also his coat, in the pocket of
which the evidence tended to show he had a pistol at
the time; that he put on his hat and coat and went out
of the office into the store proper, and then walked, con-
versing with the defendant, toward the rear of the store;
that the deceased and the defendant stopped about the
middle of the store, and there, according to the tendency
of some of the testimony, the defendant asked the de-

[Jarvis v. The State.]

ceased if he had said that the young woman had stated to him that he, the defendant, had told her to marry the deceased, and that the deceased had said "Yes, he would swear to it on a stack of Bibles," and that then the defendant threw his left arm around the deceased's right arm or shoulder, and shot the deceased from his right hand coat pocket with a pistol; but according to the tendency of defendant's testimony, the facts were that in the store the defendant asked the deceased to go with him up to see the young lady and marry her, but that the deceased refused to go; that the defendant then asked the deceased if he had stated that the young lady had said that he, the defendant, had told her to marry him, the deceased, and that then they, the defendant and the young lady, could have a good time together; that the deceased had replied, yes; that the defendant then asked the deceased to come and go and see the young lady and ask her if she had made any such statement; that the deceased refused and cursed the defendant, and told him that he was the father of the bastard child with which his wife's niece was pregnant, and grasped the defendant in the collar with his left hand and shoved him backward, and attempted to pull his, deceased's pistol, which was in his inside coat pocket, and that the defendant's life was then in danger, and that the defendant believing that his life was in danger, and that there was no other way to escape the present impending peril to his life, shot the deceased from his coat pocket, and that as the deceased turned and ran the defendant shot at him three more times, continuing to shoot until deceased fell.

A diagram intending to represent the inside of Bloch Brothers' store, where the difficulty took place, and made by the solicitor, and by which he examined witnesses in the case on the trial, was offered by him in evidence. The defendant objected to the introduction of the paper in evidence, the court overruled the objection, and the defendant then and there excepted. The solicitor drew the diagram, but several witnesses testified before it was offered as to the different points on same, and the defendant, after it was offered and introduced in evidence, after being examined on it said it was a pretty fair representation.

The defendant, while testifying in his own behalf, offered to prove that his wife had told him a week before the shooting of Reardy, that Reardy had seduced her niece and impregnated her with a bastard child. The State objected to the defendant testifying to this; the court sustained the objection, and the defendant then and there excepted to this ruling of the court.

Miss Dana, who was alleged to have been seduced by deceased, was examined as a witness, and was asked by defendant's counsel, "Did Mr. Reardy bear any relation to you," She answered, "He was my promised husband." Objection was immediately made by the solicitor. The next question asked this witness was: "Miss Dana, were you engaged to Mr. Reardy before he was killed?" She answered this question by saying, "Yes, sir." The court then ruled out her answer of its own motion; to which action of the court the defendant then and there excepted. ·The defendant propounded to one of his witnesses, Miss Laura Dana, the following question: "Miss Dana, did he (Reardy) give you an engagement ring and bracelet?" The state objected to this question, the court sustained the objection, and to this ruling of the court the defendant then and there excepted. The witness answered the question in the affirmative before the objection was made.

After the witnesses for the state had been examined and the state had rested in the taking of testimony, and after the defendant had examined his witnesses and rested his side of the case, the state introduced as a witness one Charles Freeland, who after testifying that he was a foreman of the Mobile & Ohio Railroad at the Mobile & Ohio yard, in Mobile, and that Mr. Jarvis worked under him there, up to about a week before the killing, was asked by the solicitor for the state this question: "Few days before the killing did he make any threat against Harry Reardy in your presence?" The defendant objected to this question on the ground that the facts sought to be elicited were a part of the state's case in chief, and that the state should have proved them when it was getting in its testimony before the defendant introduced any at all. The court overruled the objection, and the defendant then and there excepted. The witness then answered the question by say-

ing, "Yes sir; he did say he would kill a man if he did not marry a young lady." The witness then asked, "kill who?" He answered, "Young Reardy, I suppose."

It was shown by the evidence that the deceased made a dying declaration in which he denied having a pistol at the store, and in which he said the defendant shot him without giving him a chance; that just before the shooting he and the defendant were talking about the demand which he made, and which he said the young lady had made to him about the defendant

The state introduced one E. B. Kirkbride as a witness, and he was asked was he present when the deceased made his statement within a few hours before he died. The defendant objected to the examination of Mr. Kirkbride in reference to any statement of Reardy on the ground that Kirkbride had been present in court all the time during the trial of the case, and had heard the other witnesses testify, although the court had put all the witnesses under the rule and excluded them from the court-room during the examination of the witnesses. It was shown that the witness Kirkbride had been put under the rule and that Mr. Kirkbride had been present in the court room all during the examination of the other witnesses and had heard them testify, and that he had not been excepted from the rule by any order of the court. The court overruled the defendant's objection to permitting the witness Kirkbride to testify, and to this ruling the defendant duly excepted. The witness then testified to his having been present when the deceased made his dying declaration. The defendant here objecteo to the State's proving orally the alleged dying statement by Mr. Kirkbride, on the grounds, first, that the writing should be produced, and the proof of the contents of the dying statement made by that and not by the memory of the witness. The witness here said that after it was written, the dying statement was read to the deceased. The defendant then objected to the proof of the statement being made by the witness, on the further ground what he (Reardy) said was taken down in writing by Mr. McAlpine, and contained what Reardy said, and on the further ground that the circumstances do not show that he (Reardy) made that statement un-

der a sense of impending dissolution. The court over-ruled the objection, and the defendant then and there duly excepted.

There was evidence for the defendant tending to show that prior to the killing the general reputation of the defendant in the community where he lived was good and that it was good for peace and quiet.

The bill of exceptions contains the following recitals as to the argument of one of defendant's counsel to the jury: "During the argument to the jury one of the counsel for the defendant, the one who made the first speech to the jury for the defendant, was proceeding to argue that the deceased, Reardy, had seduced the niece of the defendant's wife, and stated to the jury that the evidence showed that the deceased, Reardy, had se-duced the said niece of the defendant's wife by means of a promise of marriage, when he was stopped in his argument by the court of its own motion, and told by the presiding judge that he had ruled out all such evi-dence as to a promise of marriage, and that that state-ment and argument could not be made. The defend-ant then and there objected to ths action of the court, and then and there excepted to the same. The counsel argued all through that deceased had seduced the niece."

In his general charge to the jury, the court, among other things, instructed the jury as follows: "The court charges you that the act must be the result of passion, and if you believe from the evidence that the deceased had connection with (I might say as near as I can ex-press it—the relationship) the niece-in-law of the de-fendant, and he was informed of that fact and he had time to think and did think, and that his mind was in a cool state, then gentlemen of the jury the court will charge you as a matter of law that there would be cool-ing time absolutely and it would constitute murder, and not manslaughter." The defendant separately ex-cepted to this portion of the court's general charge to the jury, and also separately excepted to the following portion of the court's general charge to the jury: "The burden of the proof is also on the defendant to show that he could not retreat without danger or apparent dan-ger of losing his life, or of suffering great bodily harm, and when the court says that burden of proof is on the

defendant, it means that the evidence must be sufficient to raise a reasonable doubt."

The court at the request of the state gave to the jury the following written charges: "(1.) If a party enters into a contest dangerously armed and fights under an undue advantage, even though mutual blows pass, if he slays his adversary pursuant to a perviously formed design, either special or general, to use such weapon in case of an emergency in which his life would not be endangered, or he would not be in danger of suffering great bodily harm, it is not manslaughter but it is murder." "(2.) If the defendant provoked or brought on the difficulty, or entered willingly into the fight with deceased, then he cannot set up self defense in this case." "(3.) To make the plea of self defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self defense, even if the deceased was approaching him in a hostile manner; and whether the necessity to take the life of the deceased was real or only apparent, if brought about by the design, contrivance or fault of the defendant, he cannot be excused on the plea of self defense." "(4.) In case of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice, and whenever malice is shown and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder." "(5.) If the defendant in Mobile county, and before the finding of this indictment, purposely killed the deceased by shooting him with a pistol, with a wickedness or depravity of heart towards said deceased, and the killing was determined on before hand, and after reflection (for however short a time before the fatal shooting is immaterial), the defendant is guilty of murder in the first degree" "(6.) When the defendant sets up self defense in justification or excuse of a killing, the burden of proof is upon him to show to the jury by the evidence, that there was a present, impending danger, real or apparent to life or limb or of grievous bodily harm from

[Jarvis v. The State.]

which there was no other probable means of escape, unless the evidence which proves the homicide, proves also its excuse or justification."

The defendant separately excepted to the giving of each of the charges requested by the State, and also separately excepted to the court's refusal to give the following charges requested by it: "(1.) A homicide committed under such circumstances surrounding the person charged therewith at the time of the fatal act as to create in his mind a reasonable belief, well founded and honestly entertained, of his own present and immediate imminent peril and of an urgent necessity to take the life of his assailant, as the only alternative of saving his own, or of preventing the infliction upon his person of great bodily harm, is a homicide committed in self defense." "(2.) Gentlemen of the jury, I charge you that before you can convict the defendant you must be satisfied to a moral certainty, not only that the proof if consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and unless you are so convinced by the evidence of defendant's guilt, that you would each venture to act upon that decision in matters of the highest concern and importance to your own interest, then you must find the defendant not guilty." "(3.) If the prisoner has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilty, although no such doubt would have existed but for such good character." "(4.) Gentlemen of the jury, I charge you that if you have a reasonable doubt of the defendant's guilt of murder in the first degree arising out of any part of the evidence or any want of evidence, then you must find him not guilty of murder in the first degree." "(5.) Gentlemen of the jury, I charge you that if you have a reasonable doubt of the defendant's guilt of murder in the second degree, arising out of any part of the evidence, or out of any want of evidence, then you must find him not guilty of murder in the second degree." "(6.) Gentlemen of the jury I charge you that if you have a reasonable doubt of the defendant's guilt of manslaughter in

[Jarvis v. The State.]

the first degree arising out of any part of the evidence, or out of any want of evidence, you must find him not guilty of manslaughter in the first degree." "(7.) Gentlemen of the jury, I charge you that words alone, under some circumstances may be of such an insulting or provoking character as to kindle sudden passion, and provoke immediate resentment, even to the taking of life." "(8.) The court charges the jury that a person charged with a felony should not be convicted, unless the evidence excludes to a moral certainty every hypothesis but that of his guilt, no matter how strong the circumstances are, they do not come up to the full measure of proof which the law requires, if they can be reasonably reconciled with the conclusion that the defendant is innocent." "(9.) Gentlemen of the jury, I charge you that whether there has been cooling time, such as to make a killing murder, which would otherwise be manslaughter, s a question for the jury." "(10.) Gentlemen of the jury, I charge you that malicious killing by one person of another is not murder in the first degree, nor is any killing of one person by another, done, although, maliciously, murder in the first degree, unless willful deliberate and premeditated."

LESLIE B. SHELDON, for appellant.—The trial court erred in ruling that the jurors Fincher and Cook were competent jurors to try the defendant's case. A juror having a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict, is not a competent juror.—Criminal Code of Ala., § 5016; *Jackson v. State,* 77 Ala. 18; *Bale's case,* 63 Ala. 30.

The court erred in overruling the defendant's objection to the question propounded by the solicitor for the state to the jurors McMillan and Bush. Neither party has a right to interrogate a juror before he is challenged. *Hawes v. State,* 88 Ala. 66; *Lundy v. State,* 91 Ala. 100; *Hornsby v. State,* 94 Ala. 551; *Whitehead's case,* 109 Ala. 495.

It was error for the court of its motion to rule out the evidence of the witness Laura Dana as to her having been engaged to the deceased.—*Gafford's case,* 122 Ala.

54; *Moon v. Crowder,* 72 Ala. 79, *Downey v. State,* 115 Ala. 108.

The charges refused to be given at the request of the defendant asserted correct propositions of law, and should have been given.—*Hooks v. State,* 99 Ala. 168; 1 Mayfield's Digest, 182, § 332; *Fields v. State,* 47 Ala. 605.

MASSEY WILSON, Attorney-General, for the State.— (No brief came into the hands of the reporter.)

TYSON, J.—The statement of the juror Fincher under oath, that he would try the case entirely upon the evidence clearly made him competent.—*Long v. The State,* 86 Ala. 36.

It must be admitted there is a slight degree of uncertainty shown by the examination of the juror, Cook, as to whether he had a fixed opinion that would bias his verdict. The question presented was one for the determination of the trial court, and was one of mixed law and fact to be tried as far as the facts are concerned, like any other issue of that character, upon the evidence. "The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. * * It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. * * In considering such questions in a reviewing court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when, on examination, it turns out that no real disqualification exists. In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case. The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not

necessarily be set aside and it will not be error in the court to do so."—*Reynolds v. U. S.* 98 U. S. 156. This principle is stated by our own court in this language: "The sufficiency of the cause of challenge is determined by the trial court, and the inquiries are addressed to the conscience of the juror under oath. He is examined touching his qualifications, in the presence of the judge, who sees his manner of answering the questions, and the probing of his conscience, which is oftentimes more clearly indicative of his disinterestedness or bias, than the mere words used. The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror taken as a whole, he entertained a fixed opinion which would bias his verdict."—*Long v. The State, supra.* See also 1 Thompson on Trials, § 118, p. 126 and note 5. Applying these principles, we are constrained to hold that Cook's incompetency is not shown by the record.

While it is doubtless true, that the rule prevailing in this State is, that, before challenge, neither party has *a right to* interrogate a juror, to ascertain whether he is subject to challenge, (*Bales v. The State*, 63 Ala. 30; *Hawes v. The State*, 88 Ala. 66; *Lundy v. The State*, 91 Ala. 100; *Hornsby v. The State*, 94 Ala. 55), yet, the court, in the exercise of its discretion, may permit it to be done and when allowed is not revisable.—*Mann v. The State*, 134 Ala. 1; *State v. Lautenschlager*, 22 Minn. 514; 1 Thompson on Trials, § 101, p. 100. The action of the court in allowing the solicitor to interrogate jurors Rabby and McMillan as to their relation, either by blood or by marriage, with the defendant, and in permitting the solicitor to ask juror Curtis Bush "Are you opposed to capital punishment in a case of murder," is not revisable. And we might say, with all propriety, that the action of the court was entirely proper.

The court committed no error in refusing to send for the juror who was engaged in the trial of another case. *Prater v. The State,* 107 Ala. 26.

Pringle was properly excused from serving as a juror. *King v. The State,* 90 Ala. 612.

[Jarvis v. The State.]

It is of no consequence that the diagram introduced in evidence was made by the solicitor, if correct. Nor is it of consequence, that its correctness was not shown prior to its admission in evidence, if it was subsequently proved, as was done by the defendant's testimony.— *Wilkinson v. The State,* 106 Ala, 23; *Burton v. The State,* 115 Ala. 9.

The source from which the defendant acquired his knowledge of the debauch of the girl and by whom was utterly immaterial. Besides, it was an uncontroverted fact in the case that he possessed this information before going to see the deceased. It may, therefore, properly be said, if it be conceded that the proposed testimony was competent, its exclusion was harmless.

The testimony of Miss Dana, excluded by the court, was clearly illegal. When "an illegal question is propounded and there is no objection to it and the answer is responsive, the party against whom it is offered is not *entitled* to have the answer excluded. * * But on the other hand, the court commits no error in allowing a motion to exclude, or in excluding such illegal evidence of its own motion, at any time before the jury retires."— *Liner v. The State,* 124 Ala. 1, 6; *Vaughan v. The State,* 130 Ala. 18.

To sustain the action of the court in allowing the prosecution to introduce the testimony of witness Freeland we need only to cite *Lewis v. The State,* 88 Ala. 11.

The exercise by the court of its discretion in allowing witness, Kirkbride, to testify, although he, with other witnesses were placed under the rule, but had violate it, is not revisable.—*Hall v. The State,* 137 Ala. 44.

In our opinion a sufficient predicate is shown to admit the dying declaration of the deceased in evidence. Nor is there any merit in the objection to the oral proof of those declarations notwithstanding they had been reduced to writing by a person other than deceased, and read over to him, but not signed by him, and although the writing is not produced. "This is not a case, like that of a contract, in which oral evidence is inadmissible, because there was a writing, setting forth the agreement of the parties."—*Kelly v. The State,* 52 Ala. 361, 368; *Anderson v. The State,* 79 Ala. 5; *Darby v. The State,* 92 Ala. 9.

During the examination of the witness Kirkbride,. the solicitor asked him a question which he answered, the defendant then interposed a general objection, whether to the question or answer is not shown. The objection came too late.—*Downey v. The State,* 115 Ala. 108.

The court having properly excluded all evidence of a promise of marriage, the argument of defendant's counsel was improper and the court acted correctly in stopping him.

There is no merit in the first exception reserved to the oral charge of the court.—*Stillwell v. The State,.* 107 Ala. 21; *McNeill v. The State,* 102 Ala. 121; *Keiser v. Smith,* 71 Ala. 481; *Felix v. The State,* 18 Ala. 720. We have not overlooked the case of *Hooks v. The State,* 99 Ala. 166, relied upon by appellant's counsel, where it is said in a *dictum* that cooling time is a question of fact for the jury. This is opposed to the cases cited above, and was in effect overruled in *McNeill's case,.* *supra.* We must decline to follow it.

The second portion of the oral charge to which an exception was taken, if faulty, was too favorable to defendant.

Each of the charges given at the request of the solicitor asserted correct propositions of law and were properly given.

Charge 1 refused to defendant ignores all question of freedom from fault.—*Crawford v. The State,* 112 Ala. 1; Mayfield's Dig. p. 807, § 8.

Charge 2 was condemned as being argumentative in *Amos v. The State,* 123 Ala. 50.

Charge 3 was declared to be bad in *Eggleston v. The State,* 129 Ala. 80.

Charges 4, 5 and 6 pretermit all consideration by the jury of the whole evidence.—*Murphy v. The State,* 108 Ala. 10; *Smith v. The State,* 136 Ala. 1. It is true to sustain a conviction all the elements of the crime charged must be proved beyond a reasonable doubt; and a reasonable doubt as to a material fact essential to the defendant's guilt will enure to his benefit and entitle him to an acquittal. But the fact must be material or a reasonable doubt as to it will not warrant an acquittal.

Charge 7 was properly refused.—*Bondurant v. The State,* 125 Ala. 31; *Compton v. The State,* 110 Ala. 24.

Charge 8 was, without more, faulty in omitting the word "reasonable" before the word "hypothesis."

Charge 9 should not have been given. Taking into consideration that phase of the tendency of the evidence that defendant killed the deceased solely on account of his refusal to marry the girl or because of his statement to defendant that he had impregnated the girl with child or on account of deceased's statement to others to that effect, if believed by the jury, his offense could not have been of less degree than murder.

Charge 10 need not be considered. It had reference to murder in the first degree. The conviction of defendant of murder in the second degree operated as an acquittal of murder in the first degree. The refusal of the charge, if error, was harmless.—*Winter v. The State,* 123 Ala. 1, 10; *Evans v. The State,* 109 Ala. 11; *Fallin v. The State,* 83 Ala. 5.

There is no error in the record and the judgment must be affirmed.