489 So.2d 623 (1985)
Norris WAGNER, Jr.
v.
STATE.
7 Div. 415.
Court of Criminal Appeals of Alabama.
October 8, 1985.
On Return to Remand May 13, 1986.
*624 Thomas M. Semmes, Anniston, for appellant.
Charles A. Graddick, Atty. Gen., and M. Beth Slate, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Norris Wagner, Jr. was indicted for assault in the first degree, in violation of § 13A-6-20, Code of Alabama 1975. The jury found the appellant guilty as charged in the indictment and the trial judge set sentence at 12 years' imprisonment in the penitentiary.
J.W. Pitts testified he is the minister of E Street and Christine Avenue Church of Christ in Anniston, Alabama. At approximately 4:45 p.m. on July 26, 1983, Pitts was leaving the Sawyer Motor Company when he saw the appellant in a red truck. Pitts started to ask the appellant to move his truck so Pitts could drive out when the appellant said, "I'm going to kill you" or "I aught to kill you, you black S.O.B." (R. 17.)
The appellant then fired a shot at Pitts and left. Pitts began following the appellant until he noticed blood on his leg. He then drove to the emergency room where he was treated.
Pitts stated that the appellant had threatened him in the two weeks period prior to the shooting.
Dr. Michael Cummings testified that he treated Pitts for a gunshot wound to the left arm. The bullet traveled until it hit a rib. Cummings described Pitts' wound as serious.
James McGee testified that he had a conversation with the appellant two years before the shooting in which the appellant told him to keep his family away from Pitts and his church. The appellant stated that Pitts had taken his wife and family away from him and he was going to kill Pitts.
Approximately one year prior to the shooting, Eddie McGee had a conversation *625 with the appellant concerning Pitts. McGee had gone to pick up the appellant's family for church and the appellant told him they weren't going. He told McGee he was going to kill Pitts.
On November 12, 1983, the appellant told Janie Smith that his wife and Pitts were "so dirty that they didn't need to walk upon the face of the earth and that he was going to see to it that they didn't." (R. 44.) The appellant asked Smith to relay the message to Pitts.
Charlie Smith testified that one or two weeks before the shooting the appellant told him that he was going to kill Pitts because he had broken up his family.
John L. Johnson, the minister at the Jennifer Church of Christ, testified that he and other ministers had several meetings with the appellant and Pitts prior to the shooting. The purpose of these meetings was to resolve the problems between the two men.
On the Sunday after the shooting, the appellant told Johnson that Pitts had shot at him three times. The appellant showed him three dents in his truck.
Shortly thereafter, the church withdrew its fellowship from the appellant.
Earl Wagner, the wife of the appellant, stated that she and the appellant were separated at the time of the shooting. She testified that Pitts had nothing to do with the separation.
Tommie Turner stated that she was with the appellant on the afternoon of July 26, 1983. She testified that Pitts came by the truck and the appellant started laughing at him. Pitts shot at the truck three times and the appellant shot back.
The appellant said he and Turner were riding around in his truck on July 26 when they saw Pitts. Turner said Pitts looked like a gorilla and the appellant started laughing. Pitts drove up at this time and asked what he was laughing at. The appellant continued laughing and Pitts shot at him three times. Pitts appeared as if he was going to shoot again so the appellant shot back.

I
The appellant contends the trial court improperly allowed the admission into evidence of a diagram of the scene which was prepared by the district attorney and which had notations of facts in dispute placed upon it.
The admission into evidence of a diagram used to aid a witness in his testimony is largely left to the sound discretion of the trial court. C. Gamble, McElroy's Alabama Evidence, § 123.01(2) (3d ed. 1977). The diagram does not necessarily have to be prepared by the witness and may be prepared prior to the trial. Griffin v. Gregory, 355 So.2d 691 (Ala.1978). It may be prepared by the attorney. Burton v. State, 115 Ala. 1, 22 So. 585 (1897); Jarvis v. State, 138 Ala. 17, 34 So. 1025 (1903).
Before a diagram may be admitted into evidence, a proper foundation must be laid. The witness must testify that he understands the diagram, that he has personal knowledge of the matters depicted and that it will aid him in his testimony. McElroy's, supra.
In the case at bar, a proper foundation for the admission of the diagram was laid by Pitts. He stated he understood the diagram, knew the matters it depicted and it would aid him in his testimony.
The record does not support the appellant's contention that there were improper notations on the diagram. The diagram portrayed the scene where the shooting took place. The only markings on the diagram were representations of vehicles and arrows indicating the path of travel of the two vehicles.
"... Counsel may make marks on the diagram in conformity with what he understands the witness' testimony to be, provided he then calls on the witness to confirm or correct the markings." McElroy's, supra, at § 123.01(3).
The position of the vehicles and their paths of travel were not in dispute and Pitts verified these markings during the *626 course of trial.Therefore, we find no basis of error here.

II
The appellant asserts that there was insufficient evidence presented by the State to support his conviction. We disagree.
Pitts testified that the appellant stated he was "going to kill him" before he fired the shot. Dr. Cummings characterized Pitts' injury as serious. Several witnesses testified that the appellant had told them he wanted to kill Pitts.
A review of the record clearly reveals that there was sufficient evidence, presented at trial, from which the jury could conclude, by fair inference, that the appellant was guilty of assault in the first degree. See Baldwin v. State, 342 So.2d 940 (Ala. Cr.App.1977), and cases cited. Hodges v. State, 48 Ala.App. 217, 263 So.2d 518 (1972); Tolliver v. State, 50 Ala.App. 654, 282 So.2d 92 (1973).

III
The last issue raised on appeal concerns the appellant's competency to stand trial. The appellant asserts that the trial judge erred to reversal by failing to "sua sponte conduct" a competency hearing during trial. While defense counsel did not raise this issue during trial, we feel it necessary to address this issue.
Some background information is helpful before we discuss this issue. During their deliberations, the jury asked the trial judge whether they could make a recommendation as to the mental health of the appellant. The court replied that the issue of the appellant's mental health was reserved for the court.
After the jury rendered their verdict, the court stated that "[b]ecause of the nature of the testimony in this case," the court was going to delay sentencing until a pre-sentence report was prepared. (R. 155).
On April 4, 1985, a pre-sentence hearing was held and the following occurred:
"THE COURT: I'm sorry, Mr. Wagner, based upon what I heard in the course of this trial in regard to your altercation with Mr. Pitts and your thoughts about Reverend Pitts, based upon your pre-sentence report that was prepared by the State and considering Dr. Wilkerson's report to this Court and the report of Mr. Bryan Birdsall, Psychological Examiner, for the Calhoun Cleburne Mental Health Center, and considering the limited sentencing alternatives available to the Court in this case I'm going to defer sentencing in this case once again. I'm going to order you committed to the Forensic Unit at Bryce State Hospital at Taylor-Hardin Secure Medical Facility for further testing and evaluation. And I'm going to ask the Taylor-Hardin Forensic Unit to advise me further on your present mental status as well as your mental status in the past in regard to this particular incident. Once they've completed that and reported to the Court then I will have you returned to Calhoun County and we'll take a look at your case again, at that time. And I think it will give the Court some insight into you that it needs in structuring an appropriate sentence in this case."
(R. 156 A-B)
The report, referred to by the court, which was done by the Calhoun Cleburne Mental Health Center, concluded that the appellant was suffering from delusions of persecution and a mental illness. (P.C. 9-10).
The following is the court's order, dated April 5, 1984, to have the appellant evaluated at the Taylor Hardin Secure Medical Facility.
"The Defendant in the above-styled cause was convicted of the Class B Felony Offense of Assault in the First Degree on February 15, 1984. During the course of the trial it appeared to the Court that the Defendant may be mentally ill and suffer from dilusions of persecution focused upon the victim in this case. Following the Defendant's conviction, the Court caused the Defendant to be evaluated by the Calhoun-Cleburne *627 Mental Health Center and delayed sentencing.
"This case came before the Court this date for sentencing and the Court had presented to it a pre-sentence investigation prepared by the Probation and Parole Office and a report from Wallace W. Wilkerson, M.D., in regard to the initial evaluation of the Defendant conducted by the Calhoun-Cleburne Mental Health Center.
Based upon the Court's consideration of the evidence and testimony presented during the trial of this case, and further based upon the Court's consideration of the pre-sentence investigation report presented to the Court by the State Probation and Parole Office and the report of Dr. Wallace Wilkerson, the Court is of the opinion that sentencing in this case should be delayed and the Defendant referred to the Taylor Hardin Secure Medical Facility for evaluation to determine his present mental status and his competency to proceed to sentencing in this case.
"It is therefore ordered that the Sheriff of Calhoun County, Alabama, forthwith make arrangements with the Director of the Taylor Hardin Secure Medical Facility, Tuscaloosa, Alabama, for the removal of the Defendant, Norris Wagner, Jr., from the Calhoun County Jail to the said Taylor Hardin Secure Medical Facility.
"The Director of the Taylor Hardin Secure Medical Facility is hereby requested to cause an evaluation of the Defendant to be conducted by the professional staff of said facility and to thereafter report to the Court on the Defendant's present mental status, including his mental competency to proceed to sentencing in this case and his general present mental condition.

"The Director of the Taylor Hardin Secure Medical Facility is further requested by the Court to report as to whether or not the Defendant suffers from some mental disease, defect or illness which is material to the offense committed by him in this case and to further inform the Court as to whether or not any such mental disease, defect or illness is treatable along with the prognosis of any such treatment.

The Clerk is Ordered to cause a copy of this Order to be forthwith transmitted to the Sheriff of Calhoun County, Alabama, and a copy thereof forwarded to the Honorable Tom Semmes, attorney for the Defendant, the Honorable M. Douglas Ghee, attorney for the Defendant, and the Honorable Bob Field, District Attorney for the Seventh Judicial Circuit of Alabama."
(emphasis added)
(P.C. 14-16)
On July 31, 1984, the trial court received a letter from the director of the Taylor Hardin Secure Medical Facility, informing him that the appellant had been placed "in the treatment area of the Secure Medical Facility where he will undergo continuous treatment toward restoring his competency to stand trial." (emphasis added) (P.C. 19).
In his letter the director included an evaluation of the appellant. The following quotes are portions of that evaluation.
"During the psychological evaluation focusing on his competency to stand trial, Mr. Wagner appeared to be delusional (presenting faults and beliefs). It was the impression of the examining psychologist that these beliefs significantly impacted his ability to meaningfully work with an attorney in his own defense."
. . . . .
"It appears that Mr. Wagner is currently exhibiting symptoms of a major mental illness which significantly impair his ability to work with an attorney during further disposition of his case."
. . . . .
"As Mr. Wagner appears to be suffering from symptoms of a major mental illness which impair his ability to work with his attorney, a period of psychiatric *628 treatment and further observation appears most prudent. Often times individuals suffering from paranoid delusions are treatable and are often brought into a state of substantial remission within a six month period."
(emphasis added) (P.C. 20-21).
The court received a further evaluation of the appellant in a letter dated December 27, 1984. The following are portions of that evaluation.
"It is noted that near the time of Mr. Wagner's admission to the Secure Medical Facility, he appeared to manifest symptoms of a major psychiatric disturbance. Specifically, Mr. Wagner appeared to hold delusional beliefs (beliefs unfounded in consensual reality). It appeared that these symptoms were of such severity that Mr. Wagner was unable to meaningfully work with an attorney as his legal case progressed.
"In the course of Mr. Wagner's evaluation it appears that Mr. Wagner assaulted the victim in this case based on delusional beliefs and distorted perceptions of reality. Mr. Wagner appears to have significantly benefited from psychiatric treatment including chemotherapy and available adjunctive therapies.
. . . . .
"Based on a thorough review of all available information, Mr. Wagner currently appears sufficiently psychiatrically stable to move forward in legal proceedings. Mr. Wagner appears to suffer from a major mental illness (Paranoid Schizophrenia), and indications are that this illness was related to the offense committed by him in this case. It appears that Mr. Wagner has responded well to psychiatric treatment and recognizes his need for chemotherapy. The long term prognosis of his condition is very difficult to assess. However, his chances for future good adjustment would likely be enhanced if he continues to take prescribed psychotropic medicines." (P.C. 23-24)
After the receipt of this evaluation, the trial court held a sentence hearing on January 11, 1985 and sentenced the appellant to 12 years' imprisonment.
"Trial of an accused while he is incompetent violates due process." Davis v. Alabama, 545 F.2d 460 (5th Cir.1977); Nathaniel v. Estelle, 493 F.2d 794 (5th Cir.1974). Furthermore, when a bona fide doubt as to the accused's competency to stand trial is raised, the failure to conduct a hearing on this issue violates due process. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).
"`(W)hen facts are present before the trial judge which create a reasonable and bona fide doubt as to the mental competency of the accused to stand trial, there is no question but that the trial judge must take steps to assure a reasonable legal determination of such questions.' Atwell v. State, 354 So.2d 30, 35 (Ala. Crim.App.1977), cert. denied, Ex parte Atwell, 354 So.2d 39 (Ala.1978). Even where the issue of competency to stand trial has not been raised by defense counsel, `(t)he trial judge has an ongoing and continuing responsibility to prevent the trial of an accused unable to assist in his defense.' Miles v. State, 408 So.2d 158, 162 (Ala.Crim.App.1981), cert. denied, Ex parte Miles, 408 So.2d 163 (Ala.1982). Most recently, our Supreme Court stated:
"`It is equally clear that in view of Pate, supra, (Pate v. Robinson, 383 U.S. 375 [86 S.Ct. 836, 15 L.Ed.2d 815] (1966), Pierce v. State, 52 Ala.App. 422, 293 So.2d 483 (1973), cert. quashed, 292 Ala. 745, 293 So.2d 489; and Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556 (1974), a trial court has an independent duty to inquire into an accused's state of mind when there are reasonable grounds to doubt the accused's competency to stand trial. The standard upon which this determination is to be made is set out in Edgerson, supra.'

Ex parte LaFlore, 445 So.2d 932 (Ala. 1983).
"The standard set out in Edgerson, 53 Ala.App. at 588, 302 So.2d 556, is that `a criminal defendant must have an understanding *629 of the proceedings against him and an ability to communicate with his attorney in preparing his defense before he may be proceeded against criminally.' See also Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).
"Although no general standard exists to determine the nature or amount of evidence necessary to require a competency hearing, Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975), some further inquiry must be conducted when `sufficient doubt' exists about a defendant's competence to stand trial. Drope, 420 U.S. at 180, 95 S.Ct. at 908; Atwell, 354 So.2d at 35-36."
Gothard v. State, 452 So.2d 889, 893 (Ala. Crim.App.), cert. stricken, 450 So.2d 479 (Ala.1984).
Based on our review of this transcript, we hold that there were facts before the trial judge which either did, or should have, created a reasonable and bona fide doubt as to the appellant's competency to stand trial.
While the trial judge did order an evaluation of the appellant to determine if he was competent to proceed to sentencing, there was never a hearing to determine his competency to stand trial. We feel this is necessary.
There were various indications throughout the record that the appellant should have received a hearing on his competency to stand trial. First of all, the jury expressed concern over the appellant's mental health. Secondly, the evaluations of the appellant which were done soon after the trial indicated that he was not competent to proceed to sentencing since he was unable to assist his attorneys adequately. Thirdly and most importantly, the trial judge, in his order requesting evaluation of the appellant by the Taylor Hardin Secure Medical Facility, stated that it appeared the appellant was mentally ill during the course of the trial.
Therefore, we must remand this cause to the trial court with directions that a full and fair hearing be held to determine whether the appellant was in fact competent to stand trial.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TYSON, Judge.
On October 8, 1985 this court unanimously, with opinion, remanded this cause with directions that a full and complete hearing be conducted on the issue of the appellant's competency to stand trial arising from certain allegations made during the course of the trial and comments by the attorneys and the trial court during the trial.
Pursuant to this opinion and, under the authority of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556 (1974) and Gothard v. State, 452 So.2d 889 (Ala.Crim.App.), cert. stricken, 450 So.2d 479 (Ala.1984), the trial court has conducted a full hearing on this question and entered the following order which was filed as a return to our order of remandment on April 15, 1986. This return was filed in this court on April 16, 1986. It reads as follows:

"ORDER
"The Defendant in this case was charged with Assault in the First Degree in violation of § 13A-6-20, Code of Alabama, 1975. The case was commenced by the issuance of a warrant charging the Defendant with said offense, the warrant being issued on July 27, 1983. The Defendant appeared before the Honorable Woodrow Albea, District Judge, on August 19, 1983, was appointed an attorney, namely, Honorable Tom Semmes, was advised of his rights by the Court and then waived preliminary hearing. The Defendant was subsequently indicted for Assault in the First Degree by the Calhoun County Grand Jury during its October, 1983 session, and on November 2, *630 1983, the Defendant, with his attorney Mr. Semmes, was arraigned by the Court. On February 14, 1984, the Defendant's trial commenced in the Circuit Court of Calhoun County, Alabama, and the same concluded on February 15, 1984, with the Defendant being found guilty of the offense charged. Subsequent to the Defendant being sentenced on January 11, 1985, an appeal was taken to the Court of Criminal Appeals of the State of Alabama. Said Court has remanded this case to this Court for a hearing to determine the Defendant's competency at the time he was tried in February, 1984. Said hearing, which has been previously delayed at the Defendant's attorney's request, has now been conducted by the Court and the Court makes the following findings and conclusions.
"The Court notes and would like to respectfully inform the Court of Criminal Appeals that at no time did the Defendant's attorney in this cause ever make any suggestion to the Court that his client was incompetent, appeared to be incompetent, acted incompetent or may be incompetent. Further, the Court further notes that at no point during the trial of this cause did it ever appear to the undersigned that the Defendant was incompetent to stand trial. Specifically the Court noted during the trial of this case that the Defendant appeared to be alert, appeared to understand the proceedings, appeared to comprehend what was taking place, appeared to be communicating with his attorney and appeared to understand the testimony that was being presented. In fact, the only unusual behavior that the Court noted during the entire trial was that the Defendant kept an open Bible at the counsel table during the trial (which is not of itself an uncommon act on the part of a defendant) and that during the Defendant's own testimony he appeared to have paranoid delusions which were fixed upon the victim. After the Jury found the Defendant guilty of the offense charged, the Court, on its own motion, referred the Defendant to the Taylor Hardin Secure Medical Facility for psychiatric examination prior to proceeding with sentencing. The Defendant's attorney, even after tried and through sentencing, never suggested incompetence on the part of his client. In fact, the Defendant's attorney never suggested the incompetence of his client to anyone until such time as he filed his written brief with the Court of Criminal Appeals following appeal in this case.
"This Court is caught on the horns of a dilemma. The undersigned never questioned the Defendant's competence to be tried and to proceed through trial in this case. The only indication that the Court noted that the Defendant may be suffering from any mental disease or defect was his paranoid accusations directed toward the victim which he basically espoused in defense of his actions. Even at the point of the Court receiving the Defendant's testimony, the undersigned did not consider the Defendant incompetent, but only considered that he might suffer from paranoid delusions to the extent that he was possibly insane. While insanity and incompetency oftentimes coexist, one can readily exist without the presence of the other.
"The Court has now heard the testimony of Dr. Clifford Hardin, a staff psychiatrist with the Taylor Hardin Secure Medical Facility. Dr. Hardin is of the opinion that the Defendant `within the bounds of reasonable medical probability' was incompetent at the time he was tried. Dr. Hardin reaches his conclusion, in part, through what the Court feels is somewhat circular reasoningthat is that since the Defendant was insane (paranoid schizophrenic) at the time of the act charged in this case he would be therefore rendered incompetent to rationally confront the victim at the time of trial. Even though the Court disagrees with Dr. Hardin's circular reasoning in this regard as to carry such reasoning to its logical extreme would mean that every defendant who was insane at the time of *631 the act charged would therefore be rendered incompetent at the time of trial, the Court defers to his ultimate conclusions that the Defendant was incompetent at the time he was tried.
"Even if it were not found that the Defendant was incompetent at the time he was tried in this case, the Court points out that the Defendant's attorney not only never suggested incompetence of the Defendant to be tried, but said attorney never raised the issue of the Defendant's possible lack of sanity at the time of the commission of the act charged. Without question, it appears that the Defendant was in all likelihood insane at the time of the act charged in this case. While such is a jury question in most cases, and would probably be a jury question in this case, the Defendant was deprived of a substantial defense by the inaction of his attorney. Therefore, even if this case results in the Defendant's conviction being affirmed, it appears that the filing of a Writ of Error Coram Nobis would quickly result in the Defendant being granted a new trial because of his attorney's failure to pursue what appears to be an obvious and perhaps meritorious defense.
"In conclusion, the Court specifically finds and reports to the Court of Criminal Appeals of the State of Alabama that the Defendant was, in all likelihood, incompetent at the time he was tried in this cause and the Court respectfully suggests to the said Court of Criminal Appeals that this case be reversed and the same remanded to the Circuit Court of Calhoun County, Alabama, for further proceedings. While the undersigned feels that the Defendant's attorney created the situation of which he complains, the Defendant must not be caused to suffer for his attorney's actions.
"The Clerk is hereby Ordered to cause a copy of this Order to be forthwith forwarded to the Court of Criminal Appeals of the State of Alabama, to the District Attorney for the Seventh Judicial Circuit and to the Defendant's attorney herein.
"In that the Court has suggested a reversal of this case by the Court of Criminal Appeals, no transcript of the hearing held in this case will be ordered prepared unless requested by said Court.
"DONE and ORDERED this the 15th day of April, 1986.
 "/s/ Samuel H. Monk, II
 "Circuit Judge"
Based upon the foregoing order of the trial court and the record in this cause, this court must reverse and remand this cause for a new trial.
REVERSED AND REMANDED.
All the Judges concur.