# Ross v. The State.

*Indictment for Arson.*

1. *Flight, and proximity to scene of crime, as evidence corroborating accomplice.*—The fact of flight, by a person accused or suspected of crime, has of itself some probative force as a criminating circumstance; and when it appears that the crime was committed at a very unseasonable hour in the middle of the night, proximity to the scene, and opportunity for committing it, are circumstances "tending to connect the accused

[Ross v. The State.]

with its commission" (Code, § 4895), as those words are used in the statute forbidding a conviction of felony on the uncorroborated testimony of an accomplice.

2. *Corroborative evidence; when necessary.*—Corroborative evidence, as necessary to authorize a conviction on the testimony of a single witness, is only required when that witness is an accomplice (Code, § 4895); and when the jury are left in doubt as to whether the witness was in fact an accomplice, while such doubt may be considered by them in weighing his testimony, the case is not within the statute.

3. *Weight and effect of testimony when "unreasonable and improbable."* Whether the testimony of a witness "is unreasonable and improbable," is a question for the jury; and even if the testimony is "unreasonable and improbable," it does not follow, as matter of law, that the jury must disbelieve it.

4. *Costs of return to certiorari.*—A *certiorari* having been granted in this case, to perfect the record by showing the organization of the grand jury and other proceedings, it was ordered by the court, that the clerk be allowed no costs for the return.

FROM the Circuit Court of Pike.

Tried before the Hon. JNO. P. HUBBARD.

The indictment in this case charged, in the first count, that the defendant, George Ross, "willfully set fire or burned a certain cotton-house, the property of Asa Thompson, which, with the property therein contained, was of the value of five hundred dollars;" and in the second count, that he "willfully set fire to or burned a cotton-house, or cotton-pen containing cotton, which said house or pen was the property of Asa Thompson." A trial was had on issue joined on the plea of not guilty, which resulted in the defendant's conviction and sentence to the penitentiary for the term of five years. On the trial, a bill of exceptions was reserved by the defendant, in which the facts are thus stated:

"The State introduced evidence tending to show that, on or about September 26th, 1882, a cotton-house belonging to Asa Thompson, and in which cotton was kept, was burned in said county, between twelve and one o'clock at night; that said house was immediately on the road, and formed a part of said Thompson's inclosure, his fence joining both ends of it; and that the value of said house, with the cotton contained in it, was about $100. The defendant, with one Flowers, was seen to go up said road about nine o'clock that night. They passed said house going to Spring Hill, a village in said county, and returned between twelve and one o'clock; and they passed by said house going and returning. Defendant had bought, at a store in said village, some shrouding for his step-child, who was dead. The State then introduced said Flowers as a witness, who stated, that as they passed said cotton-house going up, defendant said that the son of the owner of the cotton, who lived about a quarter of a mile from the cotton-house, had a heap of money; and that if they would set fire to the cotton-house, the

[Ross v. The State.]

son would run down there, and they could go to his house and get his money. Witness said nothing, and defendant said nothing more at that time about burning the house. They then proceeded to Spring Hill, where defendant made some purchases; and on their return, when they got near the cotton-house, defendant again stated that Asa Thompson's son had a heap of money, and if they would set the cotton-house on fire the son would run down there, and they could get his money in his absence. Witness said nothing, but went on the opposite side of the road from the cotton-house, while defendant went on the side next to it, and close thereto. Witness heard something strike like a match, and walked towards defendant, and saw him throw a lighted match, through an opening between the planks, into the cotton-house. After he did so, defendant said, ' Let's hurry up,' and they walked on up the road," quickening their pace several times at the defendant's suggestion.

" The State introduced, also, one Thompson as a witness, who testified that he, with two others, went into the field where the defendant was picking cotton, three or four days after said house was burned, and said to him, ' Will you go up to the gin-house with us ?'—said gin-house being the one at which defendant was seen on the night of the burning, and situated not far from the house that was burned. Defendant said he would go with them, and, as they went along, witness and defendant talked about picking cotton. They went towards the road leading to Boutwell's gin-house, as it is called, being the same at which defendant was seen the night of the burning; and after going some distance, one of them being on each side of defendant, it became necessary to get over a fence, and defendant got over first; and after doing so, he ran off. Witness pursued him for some distance, and overtook him, when defendant drew his knife from his pocket, and turned to resist. Witness shot him with a pistol, and he again turned and ran ;" being again pursued and overtaken, and attempting to resist, he was cut with a knife, and carried to the gin-house. " While going on, witness said, none of the arresting party told defendant the cause of his arrest, or informed him what they were going to do with him, except that they wanted him to go to the gin-house with them. Some of them were officers, but witness alone pursued defendant when he fled. The defendant then moved the court to exclude so much of the above testimony as related to his flight from the three persons who had him in arrest ; and he excepted to the overruling of his said motion. The State introduced other evidence, also, tending to show that, on the night of the burning, Asa Thompson had passed said cotton-house between nine and ten o'clock; that Charles Carlisle and Alex. Thompson also passed said cotton-house between

twelve and one o'clock that night, and only a short while before it was discovered by said Asa Thompson's daughter to be on fire, and they saw no sign of fire when they passed. There was evidence, also, of the defendant's proximity to the house at or near the time of the fire."

"This being, substantially, all the evidence, the court charged the jury, among other things, as follows: That if they find the witness Flowers to be an accomplice, then it would be necessary for his testimony to be corroborated by other testimony connecting the defendant with the commission of the offense, before they could convict upon his testimony; that the flight of a party accused or suspected of a crime, if unexplained, was a circumstance to which the jury could look against the defendant; and that, in this case, if the jury should find that such were the facts as to the defendant's flight, and that he did flee, and it was not satisfactorily explained, then such flight would be that kind of corroborative testimony which they could consider as connecting the defendant with the commission of the offense; and that the weight to be given to it was for the jury to determine." The court charged the jury, also, "that if there was other evidence, going to show that the defendant was at or near said cotton-house at the time it was set on fire, that would be such kind of corroborating evidence as the law requires should exist, connecting the defendant with the commission of the offense, before a conviction could be had on the uncorroborated testimony of an accomplice; but the weight to be given to such evidence is for the jury to determine."

The defendant excepted to each of these charges, and then requested several charges in writing, of which the court refused the following: 3. "If the conviction of the defendant depends on the witness Flowers, and his testimony connecting the defendant with the commission of the offense is not corroborated by other evidence connecting the defendant with the commission of the crime, and the jury are left in doubt by the evidence whether said Flowers was or was not an accomplice, then they must acquit the defendant." 4. "If the jury believe, from the evidence, that said Flowers was an accomplice of the defendant, then they can not find the defendant guilty, unless there is evidence corroborating said witness, connecting the defendant with the burning of the cotton-house; and evidence showing that the defendant and others were in the vicinity, at or near the time of the burning, and had the opportunity, is not such corroboration as the law requires." 9. "If the conviction of the defendant depends on the testimony of the witness Flowers, without whose evidence there could be no conviction; and further, when the testimony of said Flowers is

[Ross v. The State.]

unreasonable and improbable, then they should disregard his testimony, and acquit the defendant." The defendant excepted to the refusal of each of these charges.

A *certiorari* was awarded, at the instance of the Attorney-General, to complete the record by showing the organization of the grand jury by which the indictment was found, and other proceedings preliminary to the trial.

J. D. GARDNER, for appellant.

H. C. TOMPKINS, Attorney-General, for the State, cited *Murrell v. The State*, 46 Ala. 89; *Bowles v. The State*, 58 Ala. 335; *Lockett v. The State*, 63 Ala. 5; *Smith v. The State*, 59 Ala. 104; *Com. v. Elliott*, 101 Mass. 104; *Reg. v. Birkett*, 8 C. & P. 732.

STONE, J.—In *Bowles v. The State*, 58 Ala. 335, speaking of flight as an instrument of evidence, we said: "We think it permissible to prove the fact of flight, and all the facts connected with it, either to increase or diminish the probative force of the fact itself." This language clearly implies that flight itself, by one suspected or accused of crime, has some probative force, the weight of which is for the jury to determine.—See Whar. Cr. Ev. § 750. Corroborative testimony, to meet the requirements of the statute, must tend to connect the defendant with the commission of the offense (Code of 1876, § 4895); and any legal testimony having this tendency must be admitted.—*Lockett v. The State*, 63 Ala. 5; *Smith v. The State*, 59 Ala. 104; *Lumpkin v. The State*, 68 Ala. 56; *Marler v. State, Ib.* 580. So, proximity and opportunity, when, as in this case, the testimony tends to show the crime was committed at a very unseasonable hour, is a circumstance to be weighed by the jury, in determining the guilt or innocence of the accused. The tendency of each of these species of evidence, as far as they had any tendency at all, was to connect the defendant with the commission of the offense. It was for the jury, and not for the trial court, nor for us, to judge of their sufficiency. The demands of the statute are met, when the corroborative testimony tends to connect the accused with the commission of the offense. Its sufficiency is not a question of law.

Tested by these principles, the Circuit Court did not err in receiving testimony of defendant's flight, nor in the general charge given.

Of the charges asked by defendant and refused, charge No. 3 is involved, and would tend to mislead. Nor is it correct in point of law. To require corroboration as an indispensable condition of a conviction on the positive testimony of a witness,

[Johnson v. The State.]

the statute demands that that witness shall have been an accomplice.   It is not enough that the jury shall be left in doubt on the subject.   They must be reasonably convinced he was such accomplice, before the statutory requirement comes into play.   True, doubt whether or not he was an accomplice may be considered by the jury, in weighing the testimony of the witness, but it does not bring the case within the statutory rule, requiring corroboration as an absolute condition of conviction.

Charge No. 4 was rightly refused, on the principles above declared.   Charge No. 9 is faulty in two respects.   It assumes that the testimony of the witness Flowers, the alleged accomplice, was "unreasonable and improbable."   That was a question for the jury, and should have been stated hypothetically; and, even if the testimony of a witness is unreasonable and improbable, it does not follow, *as matter of law*, that it shall be disbelieved.   These are mere matters to be weighed by the jury, in making up their verdict.

The clerk of the Circuit Court will be allowed no costs for the return to the *certiorari.*

Affirmed.