[Crim. No. 169. First Appellate District.—August 26, 1909.]

THE PEOPLE, Respondent, v. BARTOLO SPADONI, Appellant.

CRIMINAL LAW—GRAND LARCENY—THEFT OF HORSES—SUPPORT OF VERDICT—TESTIMONY OF ACCOMPLICE—CORROBORATION.—The testimony of an accomplice to the crime of grand larceny charged against the defendant, in the theft of horses, is sufficiently corroborated to sustain a verdict of conviction when, if his evidence be considered as eliminated, the conclusion is irresistible that there is evidence in the record tending to connect the defendant with the commission of the crime, as required by section 1111 of the Penal Code.

ID.—ADMISSIONS TENDING TO CONNECT DEFENDANT WITH CRIME.—Admissions made by the defendant, which tend strongly to connect him with the larceny for which he is on trial, are a sufficient corroboration of the testimony of an accomplice introduced by the prosecution to sustain a conviction.

APPEAL from a judgment of the Superior Court of San Benito County, and from an order denying a new trial. M. T. Dooling, Judge.

The facts are stated in the opinion of the court.

Zabala & Wyatt, and Briggs & Hudner, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

KERRIGAN, J.—The defendant was charged by information with grand larceny, committed by stealing three horses, and was tried and found guilty as charged. He moved

for a new trial, which motion was denied, and he was there-
upon sentenced to imprisonment in the state prison. This
appeal is from the judgment and from the order denying the
motion for a new trial.

It appears from the record that one Dan Biscarro had been
tried for the same larceny. He pleaded not guilty, but strong
and convincing evidence was introduced against him, and he
was found guilty. At the trial of this defendant in this
case Biscarro was a witness, and confessed the crime, but
testified that he committed it at the instance of defendant
and for him, and that in its commission he was aided and
abetted by defendant; that defendant had told him that he
needed five or six horses, and asked him on several occasions
to steal them for him; that finally he consented to do so, and
stole and delivered to the defendant the three horses in
question, receiving therefor from him the sum of $80. It
was principally upon the testimony of this accomplice that
defendant was convicted, and the chief point in the case is,
Was that testimony sufficiently corroborated?

The horses were found in the possession of the defendant
within three days after they were stolen. He at the time
denied persistently that he had received them from Biscarro,
and claimed to have received them from some mythical person
whom he described with minute detail. In this connection
he stated that one morning at about 8 o'clock, while hunting
for hogs, he met this unknown person, and after some ne-
gotiations purchased the horses from him, paying therefor
on the spot $225, which sum he had in his overalls. Further-
more, he went with the sheriff to a point on the county road
five or six miles from his home, which he designated as the
place "where he paid the man the money for them over the
fence." At his trial defendant admitted that this whole
story was false and that he received the horses from Bis-
carro. The wife of Biscarro testified that she saw the de-
fendant at her house about the middle of the month in which
the theft was committed; that he came to the door, knocked
and Dan went out. "I heard him ask Dan when he was
going after the horses; Dan told him he was not going, and
Spadoni told him he wanted to see him up town; the day
following Christmas, Dan was home and had three horses in

the barn; he took them away after dark on the 26th, maybe 8 or half-past 8."

Another witness, Joe Scattini, said that he had a conversation with the defendant in reference to his arrest, during which he asked him how he was getting along, and that the defendant replied, "I will be all right if that fellow [Biscarro] don't squeal."

It was shown by the witness Bonifacio that shortly before the theft the defendant had negotiated with him for the purchase of his horses, and that he had considered the price demanded too high. The witness further stated: "About fifteen days after that I asked him if he wanted to buy that team, and he said 'No.' He told me he had made arrangements to get cheaper horses."

We think the conclusion is irresistible that, eliminating the testimony of the accomplice, there is evidence in the record tending to connect the defendant with the commission of the crime as required by section 1111 of the Penal Code.

This view, we think, is sustained by cases in this state. In the case of *People* v. *McLean*, 84 Cal. 481, [24 Pac. 32], the defendant was convicted of arson, and it was contended that the testimony of the accomplice was not sufficiently corroborated. The accomplice testified that he had set fire to the house in the presence of the defendant and at his direction, and the house was in fact burned. The circumstances of corroboration in that case were these: Considerable ill-will and bad feeling had existed between defendant and the owner of the cabin which was burned. The defendant had made contradictory statements concerning his whereabouts on the night of the fire, and there was also evidence tending to show that he desired the accomplice to leave that part of the country. It was held in that case that these circumstances tended to show defendant's guilty connection with the burning of the building. The court said: "The evidence is not strong. But although more is required by way of corroboration than to raise a mere suspicion (see *People* v. *Thompson*, 50 Cal. 480), yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the crime, although it is slight, and entitled, when standing by itself, to but little consideration. (*People* v.

*Melvane,* 39 Cal. 616; *People* v. *Clough,* 73 Cal. 351, [15 Pac. 5].)''

In the case at bar, in addition to the testimony recited above tending to connect the defendant with the commission of the offense, the accomplice testified that he was short of money just before undertaking the larceny, and upon requesting money from defendant he received from him an order on Joe Scattini for $5, which was paid. Scattini testified that he received the order; that it bore the defendant's signature, and that he paid it, but the defendant contradicted both of these witnesses, and denied he ever gave the order. As before stated the defendant, in speaking of this trouble with the witness Scattini, remarked that he would be all right if Biscarro did not betray him. Finally, for the purpose obviously of strengthening his original position—that he purchased the horses from a stranger at a named point five miles from his home, he asked witness Charles Margintini in effect if he would not testify that he saw him, defendant, leading the horses from that point toward his home.

Another case where evidence tending to corroborate an accomplice is considered is *People* v. *Melvane,* 39 Cal. 616. It is there stated: ''We think this proof tended in some degree to connect the defendant with the burglary. The weight to be given the testimony was for the jury to decide; but when money is stolen, proof that a part of it, on the following day, was found on the person of another in the vicinity, certainly tends, when not satisfactorily explained, to raise a presumption that he is the guilty party; and if an explanation is attempted by the accused it is for the jury to judge of its truth and plausibility. The corroborating evidence may be slight, and entitled to but little consideration; nevertheless, the requirements of the statute are fulfilled if there be any corroborating evidence which, of itself, tends to connect the accused with the commission of the crime.''

To the same effect is the case of *People* v. *Cleveland,* 49 Cal. 577. The syllabus correctly states the point therein decided, and reads as follows: ''On a trial for stealing a horse, if the prosecution prove the larceny by an accomplice, further proof that the next morning after the horse was stolen, the prisoner received him from the person who stole the horse

from the owner, and immediately removed him to another place for pasturage, and gave an assumed name to the person with whom he left the horse for pasturage, is a sufficient corroboration of the evidence of the accomplice to sustain a conviction. Admissions made by a prisoner, which tend strongly to connect him with the larceny for which he is on trial, are a sufficient corroboration of the testimony of an accomplice introduced by the prosecution to sustain a conviction.'' (See, also, *People* v. *Grundell,* 75 Cal. 305, [17 Pac. 214]; *People* v. *Clough,* 73 Cal. 353, [14 Pac. 5]; *Ross* v. *State,* 74 Ala. 532; *Bowles* v. *State,* 58 Ala. 335; *People* v. *Sansome,* 98 Cal. 241, [33 Pac. 202].)

A number of objections are made to the court's instructions. We have examined the objections and find them entirely without merit. The instructions as a whole gave the jury a full and fair statement of each and every phase of the law applicable to the case.

The judgment and order are affirmed.

Hall, J., and Cooper, P. J., concurred.