263 So.2d 518

**Lavonnie Cadd HODGES, alias**

**v.**

**STATE.**

**7 Div. 124.**

Court of Criminal Appeals of Alabama.

May 23, 1972.

Charles H. Wyatt, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

**TYSON, Judge.**

The indictment charges assault with intent to murder. Appellant was convicted and sentenced to serve fifteen years in the penitentiary.

The incident in question occurred in the early morning hours of October 26, 1969, in Helena, Alabama, located in Shelby County. The victim's wife, Elizabeth Nolen, testified as witness for the State that she and her husband occupied an apartment over her husband's medical office which was across the street from Helena Drugs, a drugstore. At 3:15 a. m., she and her husband were awakened by the sound of crashing glass, and both got out of bed to investigate. She stated that she observed from her window a car backed up to the drugstore and saw two men in the area. She recalled saying, "Oh, my, they are robbing the drugstore." She stated that she observed the two men for about fifteen minutes in what was described as a well lighted area.

Meanwhile, her husband had secured his pistol from the chest of drawers and proceeded to the street. He fired one shot in the direction of the drugstore. Then, two shots were fired from the direction of the automobile, and Mrs. Nolen heard her husband exclaim, "They shot me." Three more shots came from that direction, and when the firing ceased, Dr. Nolen, who had been wounded in the face, walked back to his apartment.

Mrs. Nolen testified that it was the appellant who fired the first series of shots which came from the direction of the drugstore.

In describing the two men, she stated that "one had light curly hair and a blue turtle neck sweater and the other had a plaid jacket or shirt and darker hair." Both had on "dark trousers."

At around 4:00 a. m., Chief Deputy Joe Roden of Shelby County arrived on the scene. He testified he did not have a conversation with the victim or his wife at that time, but that he did learn that something other than a burglary had taken place. He found several shotgun shells at the scene and some spent shot were found in a nearby telephone pole. After concluding his investigation, he "went on to the scene of the chase."

Cooper Shaw, Chief of Police at Wilton, Alabama, at the time, stated that around 4:00 a. m., October 26, 1969, he received a telephone call from the police dispatcher in Montevallo, Alabama. The record does not disclose what that conversation was about. He testified that he then "got in [his police car] and turned the police radio on and reported in for Shelby County and they gave me instructions where to go and what had happened." He reported to the police at Helena and "they assigned a man with me to go with me and showed me a road where to go." After he turned down Highway 31 toward Alabaster, Shaw testified that the following transpired:

"A Well, I drove a pretty good piece. I couldn't say just how far. It was a log road, kind of winding road through the woods and I met a black Falcon panel truck with two men in it and we met in a place that wasn't hardly room to pass, a mudhole, there. They stopped and I stopped and I flipped on my blue light and opened the left hand door and

stepped out behind the door and told them to come out with their hands up. They hesitated and looked at each other and I repeated it and I said, 'Come out with your hands up and come out now.' The doors threw open and they got out with their hands up and I said, 'Walk out here in front of the car.' I said, 'Keep your hands up, now, because I will shoot you if you try to pull anything. So, keep your hands up period.' "

Regarding the suspects' descriptions, Shaw testified that one "had on a turtle neck sweater, kind of a bluish looking turtle neck sweater, and the other one had on a brown checked sports coat."

He further testified that he "looked over in" the suspects' automobile and observed two shotguns therein. He then radioed Deputy Roden in Helena for assistance.

Deputy Roden testified that as soon as he arrived at the scene in Alabaster where the suspects had been apprehended, he arrested appellant and his companion. At that time he seized two twelve gauge automatic shotguns from the automobile in which they had been traveling.

I

■ On trial date, June 14, 1971, appellant moved to quash the indictment, his position being that the indictment on its face shows material alterations, and that it was error for the court to proceed under such indictment.

In examining the indictment, it appears that the person alleged to have been assaulted was first designated as Dr. Nolen Percy, and that the name "Nolen Percy" was crossed out and name of "Percy Nolen" was inserted. It further appears that the word "pistol" and the two words preceding it were crossed out.

There was no testimony in the record as to how or when such alterations came about, nor does the appellant offer any explanation in brief. He states simply that, "From all that appears on the face of this indictment it is not the act of the Grand Jury. . . ."

The rule governing this is found in 41 Am.Jur.2d, Indictments and Informations, Section 23, wherein it is stated:

"Where an indictment appears to have been altered, it has been held that in the absence of anything appearing on the face of the indictment or shown intrinsically tending to prove that the alteration was made subsequently to the execution of the instrument, it will be presumed that it was altered before execution and that it is the instrument returned by the grand jury."

See also 42 C.J.S. Indictments and Informations § 95, and cases footnoted.

Finding no evidence in the record to indicate when the interlineations in the indictment were made, it will be presumed that they were made prior to its return in court by the Grand Jury. Consequently, motion to quash the indictment on this ground was properly denied.

II

■ The record does not disclose any attempt by the appellant, prior to trial date, to bring to the court's attention his alleged denial of a speedy trial. We quote from Moulden v. State, 47 Ala.App. 573, 258 So.2d 915, which states the applicable law:

" . . . Further, the record does not reflect that any effort was made prior to trial date to have the alleged denial of a speedy trial brought to the attention of the trial court. Under Article I, Section 6, Constitution of Alabama 1901, our Supreme Court has determined that a defendant must make 'a demand for a trial or objection to the postponement of the trial, or some other effort to secure a speedy trial on the part of the accused, ordinarily must be affirmatively shown to entitle him to a discharge on the ground of delay.' Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d

158; Duncan v. State, 42 Ala.App. 111, 154 So.2d 302; Autrey v. State, 44 Ala. App. 53, 202 So.2d 88. The record here reflects no such demand."

### III

■ Appellant's motion to quash the indictment on the ground that he was not afforded counsel at his preliminary hearing, was properly denied. His preliminary hearing was held in October, 1969, and the Supreme Court, in Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202, has held that its decision in Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, does not apply retroactively to preliminary hearings conducted before June 22, 1970, the date of the *Coleman* opinion.

### IV

■ Appellant insists that he was arrested without probable cause, and that the seized shotguns, introduced in evidence over objection, were the fruits of an illegal search. We find a discussion of these contentions unwarranted, as we are convinced that appellant is without standing to challenge the seizure.

From Meade v. Cox, 310 F.Supp. 233 (W.D.Va.1970), we quote:

"The leading case on standing is Jones v. United States [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697], supra. *Jones* held the defendant in that case had standing in one of two ways. First, if possession both convicts and confers standing, standing is automatically conferred. . . . Secondly, anyone legitimately on the premises where a search occurs may challenge the legality of the search and seizure. *Jones* further held that 'this would of course not avail those who by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.' 362 U.S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706."

In Cassady v. United States, 410 F.2d 379 (5th Cir. 1969), the court spoke to this point:

"The record is devoid of evidence indicating any interest, ownership or otherwise, of Cassady in the Falcon such as to afford him standing to complain of its search. Only one whose Fourth Amendment right of privacy has been violated may object to the introduction of the fruits of an illegal search. [Citing *Jones.*]

And our own court, per Cates, Judge, has spoken to this matter in Simmons v. State, 44 Ala.App. 212, 205 So.2d 576, wherein it was stated:

"The Constitution protects 'persons, house, papers, and effects' to be secure against unreasonable searches and seizure. Simmons in no wise claimed either the claimed stray safe nor the supposedly abandoned truck.

"Applied here, we consider Simmons had no standing to complain of the seizure of the stolen safe without a warrant. . . .

" . . . In no wise do we consider the seizure as being from the person or property of the defendant. His interest in the safe was either innocently inquisitive or feloniously acquisitive. This choice was for the jury."

In point with the case at bar is Moore v. State, 44 Ala.App. 113, 203 So.2d 460, where it was held the defendant could not object to the search of the automobile in which he was a passenger, where he had no possessory or proprietary interest in the vehicle.

The record here does not reflect that appellant had any legitimate interest, proprietary, or otherwise, in the searched automobile. Rather, the record discloses that the vehicle in question had been stolen shortly after the robbery and assault had taken place.

As appellant does not come within either category of persons having standing as set

out in *Jones,* supra, we find that appellant fails to show a violation of his Fourth Amendment rights.

## V

■ At the trial, the State examined its witness, Elizabeth Nolen, concerning her husband's wounds, as follows:

"Q Describe to the ladies and gentlemen of the jury Doctor Nolen's condition at the time you met him.

"A He was bleeding. Blood was all down his pajamas and in his house shoes and he was bleeding profusely and I had grabbed some towels on the way out.

"MR. WYATT: We move to exclude what she did do. It is not responsive as to his condition.

"THE COURT: That is sustained and it is excluded from the jury. The jury is not to consider that part.

"Q All right. Mrs. Nolen, how old is Doctor Percy Nolen?

"A Sixty-five.

"Q All right. Now, do you know of your own knowledge the injuries sustained by him from the gun shot fired?

"A Yes, sir, I do.

"Q What are those?

"A He has a laceration of the right—
——

"MR. WYATT: May we enter an objection as to her not being qualified as a medical doctor to discuss the physical aspects of the injury she described and what she saw previously. We object to this type of testimony as being repetitious.

"THE COURT: That objection is overruled and the court feels that she has been adequately trained and experienced to describe what she saw. Of course, as to the progress, I would say, perhaps not, but, she can testify as to the lacera-

tions and what ever other physical conditions she saw him to be in at that time.

"Q (BY MR. WALDEN:) Mrs. Nolen, did you see the injuries that was sustained by Doctor Nolen?

"A He had lacerations on the right forehead and was bleeding profusely from his nose.

"Q All right. What did you do, then, if anything?

"A I handed him some towels and told him, 'Let's go.'

"Q All right. Now, Mrs. Nolen, did Doctor Nolen sustain any other injuries or any injuries which precipitated said injuries from the gun shot wound?

"A Other than the face and forehead?

"Q Yes.

"A No other injuries.

"Q What is Doctor Nolen's condition today?

"A Doctor Nolen is under the care of several physicians.

"MR. WYATT: We move to exclude that answer. I don't think she is qualified, medically, to make a statement as to what the Doctor's physical condition is at this time.

"MR. WALDEN: Your Honor, this testimony is offered by the State of Alabama for the purpose of showing the present condition of Doctor Nolen, who, due to his present condition is not able to come here to testify today

"THE COURT: I will allow her answer to the question.

"Q Describe Doctor Nolen's condition as it exists today.

"A He has considerable trouble with the right sinus area; he is very nervous; he is not able to carry on the work that he was doing; his work is limited very much, now; he tires very easily and

when he works, he has to go back to the physician in Birmingham, a Doctor James Hicks, for his sinus, every Sunday for a while.

"MR. WYATT: We object to this line of testimony.

"THE COURT: The court feels that the witness has answered the question. The Court would like to instruct the jury that this testimony you just heard, in response to the State's question, is allowed for the purpose of indicating to you, showing to you why Doctor Nolen is not present to testify in this case and for that purpose, only."

◼ In a prosecution for assault with intent to murder, evidence of the victim's wounds and their severity is admissible. Bone v. State, 25 Ala.App. 96, 142 So. 437; Elmore v. State, 26 Ala.App. 290, 158 So. 771; Berry v. State, 27 Ala.App. 507, 175 So. 407; Williams v. State, 20 Ala.App. 257, 101 So. 367

In *Elmore,* supra, the court stated:

"It was relevant for the state to prove the nature and character of the wound inflicted and, as tending to prove the animus of the assault, the severity of the wound and the time and medical attention necessary for it to heal. . . ."

Appellant further complains of the court's ruling in allowing the victim's wife to testify as to the nature of the victim's wounds, contending she was not medically qualified to do so. However, appellant's contention cannot be sustained as our courts have consistently allowed such testimony by one not shown to be an expert. Jacobs v. State, 146 Ala. 103, 42 So. 70; Pitts v. State, 19 Ala.App. 564, 99 So. 61; Haney v. State, 20 Ala.App. 236, 101 So. 533; Bone v. State, 25 Ala.App. 96, 142 So. 437.

VI

◼ The State introduced in evidence, over appellant's objection, an aerial photo-

graph of Helena, Alabama. Such photograph was authenticated by Elizabeth Nolen, the victim's wife, who testified that it clearly depicted the Helena business district as of October 26, 1969, the day her husband was wounded. She gave further testimony which indicated that she had personal knowledge of the area portrayed in the photograph.

Appellant cites as error the fact that the photograph was not verified by testimony of the photographer, and further that there should have been evidence as to when the photograph was taken, and the position of the camera.

In relation to the admissibility of photographs, we note the following language in Strickland v. Davis, 221 Ala. 247, 128 So. 233:

"Photographs identified by a party having personal knowledge of the location as true photographs of the scene . . . are properly admitted in evidence. It is not necessary to produce the photographer or other person present who saw the location of the camera, where this is reasonably apparent from the photographs or where the photograph discloses matters of importance regardless of where the camera was placed. . . ."

And, in City of Anniston v. Simmons, 31 Ala.App. 536, 20 So.2d 52, the court stated that:

". . . '[T]he mere fact, * * * that photographs were taken at a time different from that in question does not render them inadmissible if witnesses are able to verify them as substantial representations of the conditions as they existed at the time in question.' 20 Amer.Jur. 611."

In view of these authorities, we find that the testimony of the victim's wife provided a sufficient foundation for the introduction of the photograph in evidence.

**224**

## VII

Appellant argues that the trial court erroneously admitted in evidence an exhibit, a short barrelled shotgun, over his objection that a material change had taken place in the weapon since the time it was confiscated. There was testimony that Robert Johnson, a State Toxicologist, had dropped the weapon while it was in his possession, and a lever which served to retract the cartridge had been broken off.

As stated in Liberty National Life Insurance Company v. Weldon, 267 Ala. 171, 100 So.2d 696:

"The pertinent rule is that articles or objects which relate to or tend to elucidate or explain the issues or form a part of the transaction are admissible in evidence when duly identified and shown to be in substantially the same condition as at the time of the occurrence. . . ."

We believe this rule to have been complied with. Appellant's similar contention with respect to the shotgun shells which had been "tagged" for identification, is also without merit.

## VIII

Appellant further asserts that he was not given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but there is nothing in the record to indicate that appellant was ever interrogated, or if he was, that the fruits of such questioning were attempted to be used against him.

We have carefully examined the entire record in accordance with Title 15, Section 389, Code of Alabama, and find no error. The judgment is due to be and the same is hereby

Affirmed.

PRICE, P. J., and CATES, ALMON and HARRIS, JJ., concur.