295 So.2d 266

**Johnny BRIDGES, Jr., alias and John Miller Rogers, Jr., alias**

**v.**

**STATE.**

**7 Div. 262.**

Court of Criminal Appeals of Alabama.

May 7, 1974.

Burnham, Klinefelter, Halsey & Love and James Allen Main, and Lybrand, Sides & Hamner, Anniston, for appellant.

William J. Baxley, Atty. Gen. and James W. Webb, Sp. Asst. Atty. Gen., Montgomery, for the State.

TYSON, Judge.

The indictments by the Grand Jury of Calhoun County, Alabama, charged Johnny Bridges, Jr. and John Miller Rogers, Jr. with the first degree murder of one Ronald Mason by shooting him with a pistol or gun. After full explanation of the legal consequences, each appellant, separately, and each of their attorneys, separately, agreed to a joint trial of this cause. The Jury brought in separate verdicts. The verdicts found each appellant guilty of murder in the first degree, and fixed punishment at life imprisonment. The trial court then entered its judgments, setting sentence for each appellant in accordance with the verdicts.

Due to the voluminous transcript here on appeal, consisting of 782 pages in length, a succinct statement of the facts will be made.

On the night of Sunday, November 26, 1972, at about 10:00 p. m., one Ricky Thigpen, accompanied by the two appellants, Johnny Bridges, Jr. and John Miller Rogers, Jr., and the deceased, one Ronald Mason, went to the apartment of Anthony Richardson and his sister, Ramona Richardson, who resided in the Druid Hills section of Birmingham. Thigpen stated that he knew the Richardsons, but that he had not met Mason, the deceased, prior to this evening. He stated that several other people came in the apartment, that the group visited and smoked Marijuana. He stated that the other people left and that Johnny Bridges "went wild" and was threatening people. In essence, he stated that Bridges pulled a .22 caliber pistol and threatened Thigpen unless he would take Bridges and Rogers to Atlanta, where they wanted to rob a man called "Junior Foots," whose real name was Paul Shelton. Thigpen testified that at one time he had worked for Shelton in Atlanta. Thereafter, Thigpen, Mason, and the Richardsons were directed to try to rent a car in which the parties might go to Atlanta. Phone calls proved unavailing. Mason then left the apartment. Thereafter, the remaining parties took a cab to the Birmingham Airport and endeavored to rent a car without success from the Hertz Rental Agency. They then returned to the Richardsons' apartment and remained the rest of the evening. On early Monday morning, they went to the Ensley section of Birmingham to the home of a girl called "Scope." At her apartment they spent the remainder of the morning making telephone calls, at-

tempting to rent a car, without success. Finally, Bridges sent Thigpen and Ramona Richardson to a used car lot in an attempt to purchase a car, but the car they brought back was unacceptable. They were then directed to return the car and get back the purchase price of $200.00. This was done. Finally, the two appellants told the Richardsons and Thigpen that they wanted to see one Ricky Jetter. They obtained a ride to the Persian Lounge nightspot, sent Thigpen in to bring Jetter outside, and Thigpen stated that he engaged Jetter in an argument, that Jetter left without ever seeing either of the appellants. About this time the appellants saw the deceased, Ronald Mason, and flagged him down. They directed Mason to follow Jetter, but Jetter got away from them in traffic. Thereafter, the two appellants told Mason that he would have to take them to Atlanta. Rogers pointed the .22 caliber pistol at his head and directed him to drive.

The parties then left, driving out I–20 toward Atlanta. Thereafter, a discussion followed as to who would drive. The deceased was directed to stop his car, and several of the parties exchanged positions in the vehicle, with the deceased being seated in the front seat between the two appellants. After Mason promised to drive them to Atlanta, Rogers stopped the car and told him to drive. After driving for some distance on I–20, Mason was directed to stop the car again, and as he did so, Rogers shot him twice with a .22 caliber pistol. Bridges and Rogers then directed the witnesses to get out of the car and to get Mason's body out of the car. At this point, Bridges seized his sawed-off shotgun and fired at Mason's body, which was lying on the shoulder of the road. Anthony Richardson and Thigpen were then directed to pick up the body and throw it over the guardrail of the bridge. The remaining group were then directed to get back into the vehicle, and Rogers drove the vehicle to Atlanta.

Upon arrival in Atlanta, the group first sought rooms at the Pastors Hotel, went by a bar, and finally checked into the Downtowner Motel on Peachtree Street. After spending the night of Monday, November 28, 1972, Rogers and Bridges directed Anthony Richardson and Thigpen to get out and see if they could rent another car, threatening them and keeping Richardson's sister, Ramona, at the Motel. The two men returned and advised that they had been unable to rent a car. Thigpen was then sent out to seek "Junior Foots." Thigpen testified that he went to "Junior Foots'" (Shelton's) apartment and told him about the two appellants and what had happened to Mason. Thigpen further stated that he telephoned the Atlanta police and told them about the appellants, but that he did not give his name to them. He then went to the airport and caught a plane back to Birmingham.

The testimonies of Ramona Richardson and Anthony Richardson corroborate that of Ricky Thigpen, with the addition that, following the failure of Ricky Thigpen to return on Tuesday evening in Atlanta, the two appellants became excited and directed the Richardsons to go with them. They then got into the automobile of the deceased, Mason, which had been left on a downtown street, and drove directly to Detroit, Michigan.

Upon arrival in Detroit, they went to the Holiday Inn at the corner of Harper and Conner Streets, where Anthony Richardson was directed to go in and register, while they kept his sister in the vehicle. Richardson testified that he did as he was told, and that he was registered in Room 212 in this Holiday Inn. The group then spent the remainder of the night and part of the following morning, and upon awakening, the two appellants took Ramona Richardson with them for several hours while they went to see another man by the name of Donald Williams, who had a room at the Old Mack Hotel in Detroit. Upon their return, the appellants made the two Richardsons partially disrobe, threatened them, and later lay down on the bed to sleep. At about 3:30 on Thursday morn-

ing, Ramona Richardson testified that she went into the bathroom, turned on the shower, left the television playing, and that she and her brother managed to escape from the room. Each of the Richardsons testified that they immediately went to the lobby where they telephoned the Detroit police and told them of being kidnapped and brought to Detroit at gunpoint.

Their call was answered by two Detroit police officers, Danny Miller and Dennis Pomaville. The two officers testified that, after talking with Ramona Richardson and Anthony Richardson in the lobby of the Holiday Inn, Ramona Richardson took Officer Pomaville out to a parking lot where he saw the Cadillac automobile with an Alabama license plate on it, looked through a window, saw a sawed-off shotgun lying on the right hand floor board side of the front seat of the car, and that he reached in and retrieved this weapon. Officer Pomaville then went back to the lobby where he rejoined Officer Miller and two other Detroit police officers. The four officers then went to Room 212 where they forced open the door and woke the two appellants. They advised them that they were under arrest for kidnapping. The two officers stated that as the appellant Rogers arose, a .22 caliber pistol fell from his left pants leg to the floor. This pistol was seized, as was a ring which was on Rogers' finger. This ring was subsequently identified as belonging to the deceased, Ronald Mason.

The testimony of State Toxicologist R. B. Johnson was that he had examined the bullets that he test fired from the .22 caliber pistol seized from Rogers, and that he also test fired the sawed-off shotgun, and found that the bullets and pellets taken from the body of the deceased matched those test fired from the .22 caliber pistol and the sawed-off shotgun in question. He further stated that the cause of death was due to either the shotgun wounds or the .22 caliber pistol wounds.

The body of the deceased had been found on November 28, 1972, by one Bob LeCroy, a truck driver for Hodges Construction Company, who reported this to the Calhoun Sheriff's Department.

Sheriff Roy Snead testified that the body was found at a point just east of Oxford in Calhoun County, off Interstate I–20, and he identified photographs which showed blood on the paved portion of the highway. The body of the deceased contained a bill of sale of the Cadillac automobile in question from Midfield Volkswagon in Birmingham, and the custodian of the records for Midfield Volkswagon, one O. R. Cowart, verified the fact that the vehicle, a 1968 Cadillac, had been sold to the deceased on November 22, 1972.

Sheila Faye Smith, a half-sister of the deceased, testified that she last saw the deceased shortly before 10:00 on the evening of November 27, 1972, and that he was wearing a diamond ring, which she subsequently identified.

I

The appellants contend that the two arresting officers, Dennis Pomaville and Danny Miller, lacked probable cause to arrest them, and therefore the resulting search and seizures of the .22 caliber pistol and the shotgun, which were subsequently admitted in evidence, were unlawful. Title 15, Section 154, Code of Alabama 1940, is as follows:

"*Arrest by officer without warrant; when and for what allowed.*—An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable

cause, that the person arrested has committed a felony."

In construing the above section, our Supreme Court, in Duncan v. State, 278 Ala. 145, 176 So.2d 840, through Lawson, J., stated:

"In Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, it was said, in effect, that 'reasonable cause to believe,' as used in § 154, Title 15, Code 1940, is knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested to be guilty . . . ."

Each of the officers testified that Anthony Richardson and Ramona Richardson were standing in the lobby of the Holiday Inn in Detroit, Michigan, when they arrived pursuant to a radio dispatch by police headquarters. The Richardsons then told the two officers of their being brought to Detroit at gunpoint by the two appellants from Birmingham, by way of Atlanta. Further, Officer Pomaville accompanied Ramona Richardson into the parking lot and saw the Alabama license plate on the 1968 Cadillac, which was subsequently found to belong to the deceased. Upon looking inside the vehicle, Officer Pomaville observed the sawed-off shotgun lying in plain view on the right hand floor board side of the car. This was, at that point, seized by him. Upon returning to the lobby and showing the weapon to Officer Miller, they were joined by two other officers, who accompanied them to Room No. 212 in the Holiday Inn. Further, the room in question was registered in the name of Anthony Richardson, who had been directed to register on behalf of all the parties. Anthony Richardson testified that he gave the officers his consent to enter the room.

■ We have carefully examined the testimonies in this cause and find that not only did the Detroit officers have probable cause to arrest the two appellants, United States v. Robinson (1973), 414 U.S. 218, 94

S.Ct. 467, 38 L.Ed.2d 427; Culbert v. State, 52 Ala.App. 167, 290 So.2d 235; Miller v. State, 51 Ala.App. 303, 285 So.2d 113, cert. denied 291 Ala. 793, 285 So.2d 117; Reese v. State, 49 Ala.App. 167, 269 So.2d 622, cert. denied 289 Ala. 750, 269 So.2d 625, and make the seizures of the two weapons, Hodges v. State, 48 Ala.App. 217, 263 So.2d 518, and authorities cited therein; but also, the two appellants lacked standing to object to the seizures of the two weapons in question, Hodges, supra.

■ Moreover, Anthony Richardson had given the officers his permission to enter the room in the Holiday Inn where the appellants were arrested. Therefore, the trial court properly admitted the weapons in evidence in this cause, and the testimony relating to the ring found in Rogers' possession.

II

Since both of the Richardsons had been indicted for the slaying of the deceased, Ronald Mason, and Ricky Thigpen had also been arrested and charged with this offense, the appellants contend that they may not be convicted upon the uncorroborated testimony of these accomplices.

Title 15, Section 307, Code of Alabama 1940, reads as follows:

"*Testimony of accomplices; must be corroborated to authorize conviction of felony.*—A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

In construing this section, the Supreme Court, through Mr. Justice Stakely, in Burns v. State, 246 Ala. 135, 19 So.2d 450, held:

"Whether or not there was evidence corroborating the accomplice witness, tend-

ing to connect the defendant with the commission of the offense, is a question of law; its weight and sufficiency, along with the testimony of the accomplice to show the defendant's guilt beyond a reasonable doubt, were questions for the jury. Code 1923, § 5635 [Code 1940, Tit. 15, § 307]; Read v. State, 195 Ala. 671, 71 So. 96; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712; Lindsey v. State, 170 Ala. 80, 54 So. 516.

"It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the issue of guilt or innocence to the jury. Malachi v. State, 89 Ala. 134, 8 So. 104; Ross v. State, 74 Ala. 532; Palmer v. State, 165 Ala. 129, 51 So. 358; McDaniels v. State, 162 Ala. 25, 50 So. 324; Smith v. State, 230 Ala. 413, 416, 161 So. 538, 542."

In Sorrell v. State, 249 Ala. 292, 31 So. 2d 82, Mr. Justice Simpson stated the rule as follows:

"We think the following text soundly states the principle and is particularly applicable to the case at bar: ' * * * the proper test in determining whether there was sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to eliminate the evidence of the accomplice and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' 2 Wharton, Criminal Evidence § 752, 11th Ed."

■ The mere facts that the three eyewitnesses were also charged with the offense in question does not make them per se accomplices of the two appellants. Welch v. State, 35 Ala.App. 643, 51 So.2d 905, and cases cited therein.

■ Assuming arguendo that the three eyewitnesses are accomplices (the entire record in this cause indicates otherwise), nevertheless, the possession of the sawed-off shotgun, along with the possession of the .22 caliber pistol, both of which, when test fired, proved to be the weapons which caused the death of the deceased, also the possession of the automobile belonging to the deceased, and the diamond ring which was the property of the deceased, clearly established sufficient corroboration to connect the two appellants with the crime in question. We hold such corroboration to be sufficient under the standards herein outlined. Ross v. State, 74 Ala. 532; Hall v. State, 50 Ala.App. 666, 282 So.2d 104.

As observed by this Court through Harris, J., in Wyatt v. State, 51 Ala.App. 226, 283 So.2d 675:

"Under the statute requiring corroboration of the testimony of accomplices to authorize conviction of a felony (Title 15, § 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. 23 C.J.S. Criminal Law § 812(5), p. 125 (1961); Moore v. State, 30 Ala.App. 304, 5 So.2d 644.

"Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776."

We have carefully examined this record, including all rulings of the trial court, together with its oral charge and the given and refused charges, and find same to be free from error. Title 15, Section 389, Code of Alabama 1940. The judgments of

the trial court are therefore due to be and the same are hereby

Affirmed.

HARRIS and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.