Appellant-defendant, an indigent here and at nisi prius, was indicted for robbery and convicted therefor with punishment fixed at twenty years imprisonment. The same appointed counsel who represented defendant below represents him on this appeal.
It appears from the evidence that James E. Davis, the robbery victim, operated a small grocery store at a rural site not very far from Troy; that about 6:45 p.m. on Tuesday, November 30, 1974, a male person, later identified as Roy Sims, entered the store, seized a paper sack, and, brandishing a pistol, demanded that Mr. Davis put his money in the bag. Mr. Davis complied. He put between $1,000.00 and $1,100.00 in the sack. Sims thereupon proceeded to use the telephone on the wall at which time Mr. Davis seized his own rifle close at hand and fired several shots at the robber therefore immediately killing Sims.
During this shooting someone, not known at the time, fired a shotgun blast through the screen mesh of the back door. A pellet from the blast hit Mr. Davis in the bend of his left leg. The wound was not serious, but caused considerable bleeding.
The Sheriff, his deputy, and a state investigator, Mr. Gatland, responded to a call and made an investigation that led to the arrest of appellant-defendant, Thomas Wilborn Lewis, as the person who fired the shotgun blast, and his indictment for the robbery.
There was no evidence by anyone who saw defendant at the scene, but the evidence was circumstantial and of such character as to convince the jury beyond a reasonable doubt that defendant was the guilty person and was an accomplice in the robbery. T. 14, § 14, Code 1940.
Ron Sutton, investigator for the City of Troy Police Department, on November 30, 1974, testified he arrived at the scene of the robbery soon after it occurred. He testified about finding a piece of shotgun wadding at the scene; also, he identified two shotgun shells (not expended) which he found just outside the back door; also, he identified an expended shotgun shell which, he too, found just outside the back door. These shells were turned over to the State Department of Toxicology located at Enterprise.
Mrs. Ruth Sims, widow of the slain robber, testified that defendant Lewis came to her home in Crenshaw County between 7 and 8 o'clock, "more towards 8:00 o'clock on the night of November 30, 1974, and asked me if Roy (her husband) was there," and that she told him "no." "And he said that well, he put him off at the `Oilwell', [a filling station] and went on and eat supper and had come back to see if he come home, and said he was drinking, and the law come down there to tell them that Roy left my house a walking."
 "Q. (District Attorney) Didn't he say on that occasion that if he went off and got in any trouble it was after he put him off?
"A. Yes, sir."
 "Q. All right. Did he say anything further at that time? Did he say anything about `tell them this because I have got a wife and children'?
 "A. Yes. He told me he had a wife and children — two children. That he had to look out after, and Roy was not with him. That he put him off at the `Oil Well'."
Officer Ed Taylor, Deputy Sheriff of Pike County, testified that on the night of April 30, 1974, he found out who the slain robber was and where he lived; that the officers found the shotgun shells; that he went to Crenshaw County about 10 o'clock that night. Sgt. Gatland and Sheriff Davis were with him. The house was very near Rutledge in a trailer park.
The defendant wasn't at home, so they went a short distance to the home of defendant's father. He there noticed a green Chevrolet pick-up sitting there and he "shined my (his) light over there in the front window and saw the stock of a gun lying in the back seat which appeared to me to be a shotgun * * *." The officers seized the gun. They did not have a search warrant. *Page 428 
The truck containing the gun, so the evidence shows, was the property of defendant's father and was not the property of defendant. The gun was subsequently turned over to the Department of Toxicology as were the shotgun shells.
Sheriff Mosely of Pike County testified that he went with other officers to the home of defendant in Crenshaw County; that defendant was not at home when he arrived there, but he, (defendant) with his wife and children came up just after "we arrived." Witness further testified that he found out later that the shotgun found in the truck belonged to defendant.
Dale Carter, a qualified criminalist with the State Department of Toxicology, specializing in firearms and tool marks, testified about examining the shotgun shells and the shotgun mentioned, supra. This witness identified the expended shotgun shell as having been fired from the shotgun in evidence, the gun taken from the truck. He could not say that the unexpended shells came from the shotgun. We will not burden this opinion with the details of the tests from which he concluded that the expended shell was fired by the shotgun. The expended shell was the one found at the back door of the robbery victim's store.
Sgt. B.J. Gatland, state investigator, testified about an interview he had with defendant and his inculpatory statement, voluntarily made and after Miranda warnings (in detail) were given. The witness testified:
 "Q. All right. Just tell the Court and the Jury what he told you?
 "A. He told us he was with Roy Sims most of the day, Saturday, November 30, 1974, and that Roy Sims had indicated to him that he wanted to talk to him in confidence and that his brother Mike was with him. That he carried Mike home, and came back to the `Oil Well,' in Luverne, and met Roy Sims, and Roy told him that he needed some money and was going to get some money and asked the Defendant if about going with him and he stated that he already had been to the penitentiary one time, and didn't want to go back again."
* * * * * *
 "A. That Roy didn't want to get involved, that Roy loaned him his automobile and his car, and that Roy carried him to G.L. McCloud's house at about 5:30 Saturday afternoon, November 30, 1974, and that he stayed there and did not leave, except one time to go the store from G.L.'s, and that two cars drove up in G.L. McCloud's yard sometime after 9:00. One of the cars stayed in the yard, that being his own car, and the other car left.
 "He did not know who was in the other automobile, and his wife and he left to go home at approximately 10:00 o'clock. He went to his brother's trailer, and took the shotgun out of his car and placed it behind the seat of his father's pickup truck. And I asked him why he placed it in there, and he said he knew I was going to ask him that question, but he didn't have an answer for it.
 "Q. All right. Where did you say his father's pickup truck was parked?
"A. At his brother's trailer, Mike's trailer.
"Q. At Mike's trailer at Rutledge, is that right?
"A. Yes, sir.
The State rested.
Defendant did not take the stand, but offered his wife and G.L. McCloud, also a relative, as alibi witnesses. These witnesses testified that defendant was at the McCloud's home on or about the time of the robbery. Suffice it to say this testimony was not accepted by the jury.
 I
Appellant asserts in propositions I, II, and III that the search and seizure of the gun without a valid search warrant was illegal, and that the burden shifts to the prosecution to justify the search with persuasive testimony. *Page 429 
We again note that the searched automobile or truck was not the property of defendant and he had no right or proprietary interest in it; he had no right of possession; he was not there at the time and none of his property rights were invaded: the shotgun was in plain view. Defendant did not have standing to object to the search or admission in evidence of the seized shotgun. Davidson v. State, 48 Ala. App. 446, 265 So.2d 888 (4), cert. den., 289 Ala. 741, 265 So.2d 897; Sanders v. State,278 Ala. 453, 179 So.2d 35 (17); Bridges v. State, 52 Ala. App. 546,295 So.2d 266.
 II
We cannot agree that the evidence of Sgt. Gatland as to defendant's oral statement to him was inadmissible because not produced in response to the defendant's motion to produce recorded or written statements to the officers. The motion was limited and did not refer to oral statements. We pretermit consideration of a motion seeking enlightenment as to oral statements.
 III
We are not persuaded that the evidence was insufficient to sustain the jury's verdict of guilt as appellant claims. The evidence was circumstantial. Nevertheless, it was sufficient to sustain the verdict.[1]
We have read the entire record and made a search for errors prejudicial to defendant. We conclude that there were none and that the judgment should be and it is affirmed.
The foregoing opinion was prepared by Hon. BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
Affirmed.
All the Judges concur.
[1] Douglas v. State, 42 Ala. App. 314, 163 So.2d 477 (reversed on another ground, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934) cites Kyzer v. State, 250 Ala. 279, 33 So.2d 885 for the proposition that a jury may properly compare markings on shotgun shells and Douglas, supra, went on to approve the admissibility — though without comment as to the weight — of opinion evidence of the origin of the markings made by the breech block and firing pin of a shotgun. Shotgun marks may not be as distinctive as riflings but this deficiency is a question of the weight to be given them. Compare Evans v. Commonwealth,230 Ky. 411, 19 S.W.2d 1091, 66 A.L.R. 360, the leading case on lans and grooves.