TYSON, Judge.
The indictment charged the appellant Rickey Joe Thomas, and Steve O’Shields, with the second degree burglary of Word Lumber Company, Inc. The jury found the appellant guilty as charged, and the trial court set sentence at five years imprisonment in the penitentiary.
Richard Fleming testified that he was the Fort Payne Police Department Dispatcher on the night of December 17-18, 1975. He testified that Word Lumber Company had a burglary alarm system which was connected to the police station and that at 11:01 that evening the alarm went off. He testified that he then notified Patrolmen Long and Garmany to investigate.
Fort Payne Police Officer Ellie Walter Long testified that in response to a radio dispatch, he and Officer Garmany went to Word Lumber Company located on First Street in Fort Payne shortly after 11 o’clock on the evening of December 17-18, 1975. After a brief look around he stated that everything seemed to be in order but called Mr. Word. He stated that in a few minutes Mr. Word, the owner, appeared and that he was with Mr. Word when they discovered that a door leading to the lumber storage area in the east side of the building was open. He stated that he then walked into the building with a flashlight and discovered some lights were on and that there was some broken glass underneath a broken skylight in the roof of the building. He stated that he asked Mr. Word about the skylight.
From the record:
“Q Just tell us what you did and what you saw.
“A Well, in discovering the glass broke out I immediately assumed that maybe someone was in the place. I went outside to the car and dispatched Officer Garmany around to the front and that I needed assistance inside the building to help me check the place out further. Mr. Word went to the front door, opened the door for Garmany, and Officer Garmany come inside the place and we checked it out further. While Lester was checking one area, I was checking the other. I discovered another skylight on the north end of the building, the same lumber storage area that was broken out, also. About this time I heard—
“Q Let me interrupt you. Back at the first skylight at the south end of the building do you have a judgment as to how many feet, how far it is from the skylight down to the ground ?
“A Maybe 15 — 15 feet.
“Q Was anything underneath between the skylight and the ground at the south end of the building?
“A No sir.
*227 “Q What about at the north end of the building, that broken skylight ?
“A It had a truck parked underneath it with an open bed. The same distance, IS feet to the floor, to the concrete.
“Q Go ahead, please sir.
“A And upon discovering the second skylight broken out immediately thereafter I heard Lester Garmany say something. There was an echo inside the place. I heard him say ‘Freeze’ or ‘Get your hands up’ or something. I couldn’t make the words out clear enough and I was trying to find his location. I couldn’t detect which way it was coming from because of an echo. But I went looking for him and discovered him over in a corner.
“Q Who did you see with him if anyone?
“A Ricky Joe Thomas and Steve O’Shields.
“Q That’s Ricky Joe Thomas, the defendant, seated at this table ?
“A Yes, it is.
“Q Where were they when you saw them?
“A They were in the same place that Lester Garmany was.
“Q Where was that ?
“A It was on the east most side of the lumber storage building, maybe one-third of the way down from the front, something like that. I didn’t measure it.
“Q Was it out in this hallway?
“A It was out of the hallway. It was on the east side of the hallway.”
Officer Long also testified that he subsequently gave the appellant and O’Shields their Miranda rights upon their arrests that evening. Officer Long’s testimony was corroborated by that of Officer Lester Garmany concerning their investigation at Word Lumber Company.
Officer Garmany testified that as he entered the east side of the storage area of the building in question, he shined his flashlight in a corner and observed the appellant and O’Shields lying in the corner. From the record:
“Q You found Ricky Joe and who?
“A Steve O’Shields.
“Q What, if anything, did the defendant have on his person when you found him?
“A Yes, sir, in his left rear pocket he had a screwdriver and a pair of wire pliers. In his right hip pocket he had a kitchen knife, and he was sitting on a tire tool.
“Q Was he sitting or was he lying?
“A He was lying. His feet were stretch-out. He was more leaning over to the corner. The tire tool was in the corner.”
On cross-examination Officer Garmany testified that during the course of his investigation that evening, that they discovered two broken skylights and a parked truck at the south end of the building near First Street.
Mr. Rex Word testified that he was President of the Word Lumber Company, Inc., on December 17-18, 1975. He stated that his business was located on First Street East in Fort Payne, Alabama. He stated that in response to a call he went to the building shortly after 11 o’clock and in the company of Officers Long and Gar-many, entered the building, and in the lumber department area, after observing two broken skylights, found the appellant and his companion in one corner of the building. He also testified that there was a parked truck underneath one of the broken skylights at the south end of the building. He testified further that within the building in question were lumber, roofing, ce- *228 merit, sheetrock and other building- supplies; that these were in the immediate area where the appellant and his companion were found.
The appellant testified that he was 19 years of age and on the evening of December 17, 1975' in the company of Steve O’Shields, he did go to Word Lumber Company. He testified that prior to going there, he had been in the company of two girls, Ellen Wehunt and Darlene_, and one Larry Eller, and that they had been riding around in the automobile. He testified that Ellen had thrown his hat on top of the building.
From the record:
“Q After you were up there looking for your hat what happened?
“A I went all the way to the front side of the building, and you know they’ve got a tin part on this side and right here it’s solid flat where the wood and everything is. And over there is the store, and I was in the middle part coming across. I went to the end of it. When I got to the end of it, I looked and I didn’t find it, so I come back across, all the way back across the building. And then I was coming back across the building and there was a skylight there, and I stepped into it and fell through.
“Q After you fell through where did you land?
“A I landed in the back of a flat bed truck.
“Q What, if anything, did you do at that time?
“A I hollered at Steve O’Shields.
“Q Steve was outside ?
“A Yeah, he was on the back end over on the other side of the building, on top.
“Q Did he come over to help you ?
“A Yes sir, he come down and swung down; in the building and dropped.
“Q He came through the same skylight you came through ?
“A Yes.
“Q Did he help you up then ?
“A Yes.
“Q What did you do at that point ?
“A I got up and got out of the truck and went straight to the back door. It was aluminum or tin, I don’t know. And it had a screw, a long screw through the door, and it had a tab on it. And I tried to unscrew that tab, but I couldn’t. So then I went back and went up to the big sliding door in front of the building, and it had a padlock on it which I couldn’t get the padlock off. So then I went back to the truck, and I opened the door and looked in the floor board looking around in it, and there was some, there was a wrench in there and a screwdriver, so I got it. Then there was only one more door and it was the only one that was left, and it was the one that went inside the building. Then that’s when I got that door open. Then after I got the door open I noticed a burglary alarm went off. It was connected to the right-hand side of the door going in. Then when I knowed that we just went over there and sat down. Then about 15 or 20 minutes, something like that, they finally come. They was in. They searched all around the inside of the building and then come in. We was sitting there and he come in and told us we were under arrest and all that.
“Q Did you make any offer or attempt to run or get away or escape ?
“A No.”
On cross-examination the appellant stated that he had attempted to open one of the sliding doors but couldn’t but that he had partly jerked a door open.
From the record:
“Q What did you do after you pried the door open ?
*229 “A Sat down.
“Q Sat down there at the door ?
“A Yes, because — no, not beside the door. When I got the door open the burglar alarm went off.
“Q How do you know it went off ? Did you hear it ?
“A I knowed it was a burglar alarm, and I figured it went off.”
The appellant conceded that he and O’Shields were inside the building when arrested by the police officers.
Steve O’Shields, after being'' advised of his rights not to testify as he was a co-defendant, took the stand and testified that on the evening in question he and Rickey Joe Thomas had been riding around in an automobile with two girls, that later that evening they rode by Word Lumber Company and the appellant said, “Let’s go in there.” He stated that the appellant led him onto the roof and that they went through a window in the roof. He stated that the appellant knocked it out, that after getting through the skylight they tried to open a back door but that it tripped the alarm system. He said that Rickey Joe Thomas had a screwdriver and had used this to work on the door when the alarm went off. He stated that they had hid in a corner of the building and were arrested by the officers.
On cross-examination he testified that neither had taken anything from Word Lumber Company that evening.
I
In Eason v. State, 48 Ala.App. 471, 265 So.2d 913, we find:
“The applicable elements of second degree burglary are: (1) breaking, (2) entering, (3) with intent to steal or to commit a felony. The evidence, without contradiction, shows the first two ingredients. Behel v. State, 40 Ala.App. 689, 122 So.2d 537. From Behel, this Court per Cates, J., stated:
‘The jury may reasonably infer intent to steal from the mere presence of the accused in the shop in circumstances showing a breaking and entering in the night.’ ” (cases cited)
Clearly, the State here presented a prima facie case and the “so called need for the defendant’s explaining his presence,” under the circumstances, presents a question for the jury. Eason v. State, supra; Hare v. State, 52 Ala.App. 279, 291 So.2d 371.
II
Appellant next contends that this cause should be reversed as the defendant may not be convicted upon the uncorroborated testimony of an accomplice, Title 15, Section 307, Code of Alabama 1940. The record is not entirely clear that O’Shields was an accomplice, however conceding him to be such for, the sake of argument, there is ample other testimony from the investigating officers, and from Mr. Word, to support the conviction in question. Sorrell v. State, 249 Ala. 292, 31 So.2d 82; Skumro v. State, 234 Ala. 4, 170 So. 776; Wyatt v. State, 51 Ala.App. 226, 283 So.2d 675; Bridges and Rogers v. State, 52 Ala.App. 546, 295 So.2d 266.
We have carefully examined this record and find no error therein. The judgment of the trial court is due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO, and BOOKOUT, JJ., concur.
CATES, P. J., not sitting.